[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff, Tandem Food Corporation ("Tandem") seeks a temporary injunction against the pursuit by the defendant, McNeiece Construction Co. ("builder"), of a demand for arbitration as to the claimed breach of a construction contract. Tandem alleges that it as not a party to the contract to build a restaurant at Stamford Town Center, that it has not agreed to arbitrate the builder's claims, and that the builder should therefore be enjoined from pursuing an arbitration demand it filed with the American Arbitration Association identifying Tandem as the party against whom the claim is made.
The procedural history of this case is the subject of judicial notice. Earlier this year, the builder moved to confirm and Tandem and another entity, California Smoothie of Connecticut Inc. ("California Smoothie"), moved to vacate an arbitration award arising from the same contract. The application to vacate was based on two grounds. The first, the claim of lack of impartiality of the arbitrator, was found to be meritorious, and the undersigned ordered the arbitration award vacated on the basis. The second ground, raised by Tandem, was that it was not a party to the contract, and that the arbitrator had exceeded his powers in issuing an award as to a party that had not agreed to arbitration. The undersigned rejected this ground, finding that Tandem had filed a demand for arbitration that was vacated by the court.
After the court vacated the initial arbitration award, the builder did not seek a new hearing as to its original demand for arbitration but instead filed a new demand. Tandem did not file any demand for arbitration; and Tandem takes the position that it was not a party to the contract that provides for arbitration and it has not otherwise agreed to arbitration.
Whether a particular dispute is arbitrable is a question for the court, unless, by appropriate language; the parties have agreed to arbitrate that issue. John A. Errichetti Associates v. Boutin, 183 Conn. 481, 488 (1981); Connecticut Union of Telephone Workers, Inc. v. Southern New England Telephone Co., 148 Conn. 192,198 (1961). Where the scope of the agreement to arbitrate is at issue, arbitration should occur unless it may be said with "positive assurance" that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Errichetti, supra, at 489; Board of Education v. Frey,174 Conn. 578, 582 (1978). Where the issue is whether there was any agreement to arbitration at all, the issue is whither the CT Page 7344 requirements of 52-408 C.G.S. are satisfied.
The Connecticut Supreme Court has ruled in Bennett v. Meader, 208 Conn. 352 (1988) that an agreement to abritrate, to be enforceable, must comply with the requirements of 52-408
C.G.S. That statute makes enforceable "an agreement in any controversy thereafter arising out of such contract . . . ." In the absence of either a written agreement to arbitrate or a written submission to the arbitrator, signed by the parties to the arbitration, the outcome of an arbitration is unenforceable, as the arbitrator lacks authority to decide the dispute. Bennett v. Meader, supra, at 363-4.
Where a party has filed a demand for arbitration, that evidence of agreement to bestow adjudicative authority on an arbitrator is also enforceable. Schwarzchild v. Martin,191 Conn. 316, 321 (1987). While Tandem submitted to the first arbitration by filing a written Tandem submitted to the first arbitration by filing a written submission when the builder first sought to arbitrate, it has filed no such submission as to the present arbitration. The issue then is whether the construction contract itself, titled Standard Form of Agreement Between Owner and Contractor, dated August 12, 1991, constituted a written agreement by Tandem to submit disputes to arbitration.
The contract which the builder claims constitutes an agreement to arbitrate identifies the parties as the "Owner," California Smoothie of Connecticut, Inc., and "the Contractor,: McNeiece Construction, Inc. Tandem Food Corporation is identified as "the Architect;" however the contract recites that "The Owner and the Contractor agree as set forth below:," with no indication that "the Architect" likewise is bound by the agreement. The contract provides at paragraph 7.9 for arbitration of "all claims, disputes and other matters in question between the Contract Documents . . . ." The agreement is signed by the Owner, California Smoothie of Connecticut, Inc., by its President, Richard Pineles; and by the Contractor, McNeiece IV. The agreement is not signed by Tandem.
The builder takes the position that although California Smoothie, not Tandem, signed the construction agreement, that contract, including the agreement to arbitrate, should be construed to be the legal obligation of Tandem because the two corporations were, in reality, one enterprise. CT Page 7345
The court finds that the contract at issue had as its subject matter the construction of a store in retail space located at Stamford Town Center. The builder negotiated the terms of the project with Kenneth Kaefer, an employee of Tandem and a draft of the construction contract, prepared by Tandem identified Tandem as the owner. When the builder made a counterproposal, it did so in a draft contract, likewise identifying Tandem as the owner. Richard Pineles is president of both Tandem and California Smoothie, and his father and sister are the directors of both corporations. Pineles testified that California Smoothie is a division of an entity known as Connecticut Smoothie International, of which Tandem is the parent company. Though he is president of California Smoothie, Pineles testified that he did not know the date when that corporation was created; however he acknowledged that it was not in existence in May 1993, when Tandem and the builder were exchanging proposed drafts of the construction contract which identified Tandem as the owner.
The Court finds that during the performance of the contract, Tandem conducted itself as though it were a party to the construction contract in that it authorized changes to the scope of the contract in three separate change orders that are signed by Kaefer on behalf of Tandem Foods as the Owner (Ex. 4, 5, 6). Tandem made two payments totalling $121,994.51 in checks signed by Pineles, not on behalf of California Smoothie, but on a signature line identifying the payor as Tandem Food Corporation [Corporation] (Ex. 7). No payments at all were made by California Smoothie.
While Pineles testified that Tandem was managing the construction project for California Smoothie, no management agreement was presented in evidence. Kenneth Kaefer, an employee of Tandem, was the day-to-day representative of the "Owner" during construction, and there is no evidence that any employee of California Smoothie had any dealings with the builder during construction. The plan and blueprints that are incorporated in the contract bear only one corporate name, Tandem Food Corporation, plus trademark logos for California Smoothie and "Grandma Beas' Turkey."
When disputes arose as to the project, Tandem Food Corporation filed a demand for arbitration dated November 18, 1991, indicating that it regarded itself as a party to the contract eligible to invoke the arbitration provisions of the CT Page 7346 contract.
The Connecticut Supreme Court has held, in a case involving not liability as to a contract but the separate taxation of parent and subsidiary corporations, SFA Folio Collections, Inc. v. Bannon, 217 Conn. 220, 232 (1991), that the separate corporate entities of affiliated corporations "will be recognized, absent illegitimate purposes, unless: `a) the business transaction, property, employees, bank and other accounts and records are intermingled; b) the formalities of separate corporate procedures for each corporation are not observed . . . c) the corporation is inadequately financed as a separate unit from the point of view of meeting its normal obligations . . . d) the respective enterprises are not held out to the public as separate enterprises; e) the policies of the corporation are not directed to its own interest primarily but rather to those of the other corporation. H. Henn J. Alexander, [Laws of Corporations (3d Ed. 1983 149, pp. 355-56; see also Hammond v. United States,764 F.2d 88, 100 (2d Cir. 1985)."
The Appellate Court applied the Supreme Court's analysis in SFA Folio Collections, Inc. v. Bannon to a case involving imposition of liability on a party claimed to be the controlling identity of the corporation in United Electrical Contractors, Inc. v. Progress Builders, Inc., 26 Conn. App. 749 (1992), and indicated that the formulation set forth in that case did not replace or alter the prior standards for piercing the corporate veil with regard to a transaction, and that the corporate for will not be given effect "when the corporate entity has been so controlled and dominated the justice requires liability to be imposed on the real action," citing Saphir v. Neustadt, 177 Conn. 191,209 (1979); Falcone v. Night Watchman Inc., 11 Conn. App. 218
(1987). The Appellate Court confirmed that separate corporate identity will not be given effect under either the "instrumentality" rule stated in Saphir v. Neustadt, supra, or the "identity rule" stated in Ziast v. Olson, 154 Conn. 563, 576
(1976).
The court finds that the evidence referred to above establishes that Tandem controlled and dominated California Smoothie with regard to the transaction at issue and that the effect of this control was to obtain construction services but to try to avoid contractual liability. The fact that Tandem made the only payments, which are approximately $80,000 less than the contract price, raises the inference that California Smoothie was CT Page 7347 established in the middle of contract negotiation but lacked funds to honor the contract at issue. By approving contract modifications and initially demanding the benefits of the contractual remedy of arbitration, Tandem demonstrated an exercise of control of the transaction at issue that it should not be permitted to avoid.
Tandem is not entitled to a temporary injunction restraining the builder form proceeding with arbitration, as the court finds, pursuant to the standard set forth in Griffin Hospital v. Commission on Hospitals and Health Care, 196 Conn. 451, 457
(1985); Olcott v. Pendleton, 128 Conn. 292, 295 (1941), that it is unlikely to prevail on the merits of its claim that is not subject to the agreement to arbitrate disputes in the transaction at issue.
Tandem's application for injunctive relief is denied.
Beverly J. Hodgson Superior Court