## ANN J. BENNETT ET AL. *v.* ELAINE MEADER
## (13293)

HEALEY, SHEA, GLASS, COVELLO and HULL, Js.

Argued April 15—decision released July 19, 1988

*Antoinette E. Grenier,* for the appellant (defendant).

*Christopher B. Carveth,* for the appellees (plaintiffs).

ARTHUR H. HEALEY, J. The issue on this appeal is whether an arbitration award must be vacated at the request of a party on the basis that there was no written agreement between the parties to submit the dispute to arbitration. The defendant appeals from the judgment of the trial court, *McGrath, J.,* vacating the arbitration award. We find no error.

The facts are not in dispute. On November 9, 1982, an automobile owned and operated by the named plaintiff, Ann J. Bennett, was involved in an accident with an automobile owned and operated by the defendant, Elaine Meader. Ann Bennett and her husband, Philip Bennett, then brought a civil action seeking damages for personal injury, lost wages and loss of consortium as a result of the accident.

In December, 1985, original counsel for the plaintiffs began negotiations for settlement with the defendant's insurer, Travelers Insurance Company (Travelers). Plaintiffs' counsel made a settlement demand of $60,000, and Travelers' claims manager offered $30,000. The

settlement negotiations reached an impasse with the plaintiffs' final demand of $43,000 and Travelers' final offer of $33,000. Travelers' claims manager then suggested resolution of the dispute by arbitration. All parties orally agreed to arbitrate as to both liability and damages.

The insurer contacted the American Arbitration Association (AAA), which sent to the attorneys for the parties a notice of hearing, biographical data on the arbitrator,[1] a blank submission agreement, an oath to be signed by the arbitrator, and a copy of the AAA's alternative dispute resolution rules. After some discussion among the parties and the AAA, the parties accepted the AAA's selection of attorney Robert Berchem as the arbitrator. Neither the plaintiffs nor the defendant completed the submission agreement provided by the AAA, nor did the parties execute any other writing memorializing their agreement to arbitrate the dispute.

On or about March 17, 1986, the plaintiffs voluntarily withdrew their civil action from the Superior Court docket. On June 5, 1986, the arbitration hearing was held as to both liability and damages resulting from the automobile accident. All parties to the dispute testified at the hearing. By memorandum of decision dated June 26, 1986, the arbitrator assessed liability and damages against the defendant as to Ann Bennett's claims in the amount of $5110.20. The memorandum of decision did not mention Philip Bennett's claim for loss of consortium. The plaintiffs then filed an application in the Superior Court to vacate the arbitration award.

After a hearing, the trial court vacated the arbitration award. The court ruled that General Statutes

---

[1] The American Arbitration Association's alternative dispute resolution procedures refer to the arbitrator or mediator as the neutral. See American Arbitration Association, Alternative Dispute Resolution Procedures (1984).

§ 52-408[2] requires that an arbitration agreement, to be enforceable, must be in writing. The defendant appealed to the Appellate Court and this court transferred the case to itself pursuant to Practice Book § 4023.

Resolution of the issue in this case requires this court to make a threshold determination of whether arbitration in Connecticut is controlled by both statute and common law or by statute alone. We hold that our comprehensive statutory scheme regarding arbitration, General Statutes §§ 52-408 through 52-424, controls arbitration in this state where the common law is inconsistent with our statutory scheme.

Many jurisdictions regard common law arbitration and statutory arbitration as coexistent. See, e.g., *Zelle* v. *Chicago & North Western Railway Co.*, 242 Minn. 439, 446, 65 N.W.2d 583 (1954); *Heffner* v. *Jacobson*, 100 N.J. 550, 554, 498 A.2d 766 (1985); *Daniels Ins. Agency* v. *Jordan*, 99 N.M. 297, 299, 657 P.2d 624 (1982); *Lammonds* v. *Aleo Mfg. Co.*, 243 N.C. 749, 753, 92 S.E.2d 143 (1956); *Runewicz* v. *Keystone Ins. Co.*, 476 Pa. 456, 460, 383 A.2d 189 (1978); *Harwell* v. *Home Mutual Fire Ins. Co.*, 228 S.C. 594, 600, 91 S.E.2d 273 (1956). We favor the approach that the arbitration statute governs where the statute conflicts with the common law. See, e.g., *Andrews* v. *Stearns-Roger, Inc.*, 93 N.M. 527, 602 P.2d 624 (1979).

---

[2] General Statutes § 52-408 provides: "AGREEMENTS TO ARBITRATE. An agreement in any written contract, or in a separate writing executed by the parties to any written contract, to settle by arbitration any controversy thereafter arising out of such contract, or out of the failure or refusal to peform the whole or any part thereof, or a written provision in the articles of association or bylaws of an association or corporation of which both parties are members to arbitrate any controversy which may arise between them in the future, or an agreement in writing between two or more persons to submit to arbitration any controversy existing between them at the time of the agreement to submit, shall be valid, irrevocable and enforceable, except when there exists sufficient cause at law or in equity for the avoidance of written contracts generally."

This approach is consistent with prior holdings of our court. This court has declared that "authority for arbitration must be derived from the agreement of the parties . . . and the relevant provisions of applicable statutory directives . . . ." *W. J. Megin, Inc.* v. *State,* 181 Conn. 47, 49, 434 A.2d 306 (1980). The development of our statute was recounted briefly in *Reinke* v. *Greenwich Hospital Assn.,* 175 Conn. 24, 392 A.2d 966 (1978), and that discussion is illuminating. "In 1929, by virtue of 1929 Public Acts, chapter 65, the legislature enacted what is now chapter 909 of the General Statutes which, in effect, rendered arbitration contracts subject to specific statutory requirements . . . ." Id., 26–27.

There also have been instances where Connecticut courts, with reference to specific statutory provisions, have implied that the statutory scheme governs arbitrations where there may be a conflict with the common law. In *Carroll* v. *Aetna Casualty & Surety Co.,* 189 Conn. 16, 22, 453 A.2d 1158 (1983), we stated: "The right to review an arbitration award is wholly encompassed within the parameters of § 52-418."[3] General

[3] General Statutes § 52-418 provides: "VACATING AWARD. (a) Upon the application of any party to an arbitration, the superior court for the judicial district in which one of the parties resides or, in a controversy concerning land, for the judicial district in which the land is situated or, when the court is not in session, any judge thereof, shall make an order vacating the award if it finds any of the following defects: (1) If the award has been procured by corruption, fraud or undue means; (2) if there has been evident partiality or corruption on the part of any arbitrator; (3) if the arbitrators have been guilty of misconduct in refusing to postpone the hearing upon sufficient cause shown or in refusing to hear evidence pertinent and material to the controversy or of any other action by which the rights of any party have been prejudiced; or (4) if the arbitrators have exceeded their powers or so imperfectly executed them that a mutual, final and definite award upon the subject matter submitted was not made.

"(b) If an award is vacated and the time within which the award is required to be rendered has not expired, the court or judge may direct a rehearing by the arbitrators."

Statutes § 52-418 goes beyond the common law and provides additional grounds upon which to vacate an award. See *Yale & Towne Mfg. Co.* v. *International Assn. of Machinists*, 15 Conn. Sup. 118, 119 (1947). The Appellate Court has concluded similarly: "Arbitration proceedings, including court proceedings to compel arbitration, are creatures of statute in Connecticut and are not common law actions." *Fishman* v. *Middlesex Mutual Assurance Co.*, 4 Conn. App. 339, 345, 494 A.2d 606, cert. denied, 197 Conn. 806, 807, 499 A.2d 57 (1985); see also *R. A. Civitello Co.* v. *New Haven*, 6 Conn. App. 212, 226, 504 A.2d 542 (1986); *Skidmore, Owings & Merrill* v. *Connecticut General Life Ins. Co.*, 25 Conn. Sup. 76, 84, 197 A.2d 83 (1963). At common law, a party could not compel arbitration through judicial process. See A. Gold, "Judicial Interpretations and Applications of the Connecticut Arbitration Statutes," 7 Conn. L. Rev. 147, 149 (1974), citing *Yale & Towne Mfg. Co.* v. *International Assn. of Machinists, supra*; R. Rodman, Commercial Arbitration (1984) § 3.1, pp. 48–49. In contrast, this court has extended equity to remedy a dispute that was not within the purview of the statute. See *Gaer Bros., Inc.* v. *Mott*, 144 Conn. 303, 130 A.2d 804 (1957).

Additionally, there are a multitude of references to the common law arbitration scheme that were made in the past tense. In discussing an arbitrator's use of ex parte evidence, this court noted that "[t]his *was* permitted even under the common law. . . . The statute codifies the former rule." (Emphasis added.) *International Brotherhood of Teamsters* v. *Shapiro*, 138 Conn. 57, 64–65, 82 A.2d 345 (1951); see generally *Yale & Towne Mfg. Co.* v. *International Assn. of Machinists, supra*. Further, Judge John Cotter, later Chief Justice of this court, noted that "[a]rbitration is in derogation of the common law," in that it removes the resolution of disputes from the courts, where the claimant has a

right to disposition, to a private forum. *Hartford Accident & Indemnity Co.* v. *Travelers Ins. Co.,* 25 Conn Sup. 414, 416, 206 A.2d 847 (1964). Common law rules of arbitration must yield to statutory provisions concerning the subject matter of the rules. See *Burns* v. *Gould,* 172 Conn. 210, 222, 374 A.2d 193 (1977).

This case law illustrates, at the very least, the long standing assumption by our courts that arbitration is governed by statute where the statute is inconsistent with the common law. Our courts have not taken opportunities to declare explicitly that the statutory arbitration scheme is cumulative with the common law, as many other jurisdictions have. See R. Rodman, supra, § 3.1, p. 50. Neither has the legislature expressly preserved the common law rules along with the statute, as some states have done. See, e.g., Ala. Code § 6-6-16 (1975).

The view that we express today also is consistent with accepted principles of statutory construction. "In cases of conflict between legislation and the common law, legislation will govern because it is the latest expression of the law." 2A J. Sutherland, Statutory Construction (4th Ed. Sands 1984) § 50.01, p. 421; see *Skorpios Properties, Ltd.* v. *Waage,* 172 Conn. 152, 156, 374 A.2d 165 (1976). The statutory arbitration scheme encompasses many aspects of the arbitration process ranging from the agreement to arbitrate; General Statutes § 52-408; through the relationship between the arbitration process and the judicial process; General Statutes §§ 52-409 and 52-410; discovery; General Statutes § 52-412; and postaward action; General Statutes §§ 52-417 to 52-421; to judicial appeal. General Statutes § 52-423. Thus, it is evident that the legislature's purpose in enacting the statutory scheme was to displace many common law rules. Having decided that the statutory scheme replaces the common law where there is any inconsistency between the two, we now can

address directly the propriety of the trial judge's decision vacating the arbitration award that was not made pursuant to a written agreement to arbitrate.

At common law, an oral agreement to arbitrate was valid. R. Rodman, supra, § 3.1, p. 50. The parties to the agreement, however, could not obtain a court order compelling arbitration under the agreement. An aggrieved party could resort to judicial intervention for equitable relief only if the arbitrator was accused of fraud or partiality, if the arbitrator failed to apply the decision-making principles established by the parties, or if one or more of the parties acted fraudulently.[4] *Yale & Towne Mfg.* v. *International Assn. of Machinists,* supra, 119. A party could not otherwise seek judicial confirmation, modification or vacation of the award. See id.; *Fisher* v. *Towner,* 14 Conn. 26, 30 (1840); M. Domke, Commercial Arbitration (Rev. Ed. Wilner 1984) § 3.01, pp. 22–23. General Statutes § 52-408 provides, however, that any agreement to arbitrate in any written contract, or in a separate writing executed by the parties to a written contract, or an arbitration provision in the bylaws of an association or corporation of which the parties are members, or an agreement in writing between two or more persons to arbitrate a controversy that exists between them at the time of the agreement, shall be valid, enforceable and irrevocable unless sufficient legal or equitable cause exists to avoid a written contract in general. Because we have decided that our statutory scheme controls arbitration in Connecticut where inconsistent with the common law, it is clear from this latchkey provision that only written agreements to arbitrate are valid. Oral agreements are not included, implicitly or explicitly, in the description of valid arbitration agreements. This is exemplified in

---

[4] This rule has been retained in the statute under General Statutes § 52-418. See footnote 3, supra.

General Statutes § 52-421,[5] which requires that any party seeking to modify, confirm or correct an arbitration award in court, a procedure that was prohibited at common law, must file certain *papers* with the court, one of which is the agreement to arbitrate.[6]

This court explained the statutory scheme and the necessity of a written agreement in *McCaffrey* v. *United Aircraft Corporation,* 147 Conn. 139, 157 A.2d 920, cert. denied, 363 U.S. 854, 80 S. Ct. 1636, 4 L. Ed. 2d 1736 (1960). "The statutes relating to, and governing, arbitration in this state are set out in chapter 909 of the General Statutes. The basis for arbitration in a particular case is to be found in the written agreement between the parties." Id., 141–42. In *Schwarzschild* v. *Martin,* 191 Conn. 316, 317, 463 A.2d 527 (1983),[7] we

---

[5] General Statutes § 52-421 provides in pertinent part: "RECORD TO BE FILED WITH CLERK OF COURT. EFFECT AND ENFORCEMENT OF JUDGMENT OR DECREE. (a) Any party applying for an order confirming, modifying or correcting an award shall, at the time the order is filed with the clerk for the entry of judgment thereon, file the following papers with the clerk: (1) The agreement to arbitrate, (2) the selection or appointment, if any, of an additional or substitute arbitrator or an umpire, (3) any written agreement requiring the reference of any question as provided in section 52-415, (4) each written extension of the time, if any, within which to make the award, (5) the award, (6) each notice and other paper used upon an application to confirm, modify or correct the award, and (7) a copy of each order of the court upon such an application."

[6] The requirement of a written agreement also is supported by other provisions in the statutory scheme which would be rendered superfluous in the absence of a written agreement because of the provisions' express requirement of such an agreement. See, e.g., General Statutes § 52-409—stay of proceedings in court; General Statutes § 52-410—application for court order to proceed with arbitration; General Statutes § 52-411—appointment of arbitrator or umpire; General Statutes § 52-412—subpoenas and depositions; and General Statutes § 52-414—additional arbitrator.

[7] The defendant cited *Schwarzschild* v. *Martin,* 191 Conn. 316, 463 A.2d 527 (1983), in her brief in support of the proposition that the plaintiffs' claim that the agreement was revocable was unpersuasive because it was not made before the award. The defendant cited the following language: " 'In the absence of a statute requiring a signature . . . parties may become bound by the terms of a contract, even though they do not sign it, where their

clarified the requirements of § 52-408 by stating that the section did not necessarily require that the agreement contain the signature of both parties, but the agreement had to be a "written contract" or "separate writing." See also A. Gold, supra, 149 (§ 52-408 details *documents* that can meet the requirements of a valid arbitration agreement).

Similarly, under other statutory arbitration schemes, such as the United States Arbitration Act, 9 U.S.C. §§ 1 through 14 (1982), which is modeled after the Uniform Arbitration Act, the parties must have a written agreement to gain the benefit of its provisions. See 9 U.S.C. § 2 (1982). The act applies only to controversies where there is a written agreement to arbitrate. See *Genesco, Inc.* v. *T. Kakiuchi & Co. Ltd.*, 815 F.2d 840, 846 (2d

---

assent is otherwise indicated, such as by the acceptance of benefits under the contract.' " Id., 321–22, quoting 17 Am. Jur. 2d, Contracts § 70.

In *Schwarzschild,* the plaintiff entered a written agreement with the defendants to purchase some stock. In an addendum to the agreement, there was a clause stating that the parties would submit any dispute to arbitration. The defendants signed the addendum but the plaintiff did not. A dispute later arose and the defendants requested arbitration and the plaintiff agreed. During arbitration, however, the defendants learned that the plaintiff had not signed the written addendum containing the arbitration clause, and the defendants filed a civil action to restrain further arbitration claiming fraud and invalidity of the agreement. *Schwarzschild* v. *Martin,* supra, 317–19. This court found no error in a decision upholding the unsigned arbitration agreement. Id., 321.

The language quoted in the defendant's brief seems to indicate that the parties to an arbitration agreement must be held to their bargain. In other words, one who participates in an arbitration is estopped from later claiming that the arbitration is invalid because of a defective agreement. Although this proposition may be true when there is a dispute over an agreement that was not signed by the parties, that circumstance must be distinguished from the instant case.

In *Schwarzschild,* this court stated: "Nowhere in the statute is found the specific requirement urged on us by the defendant that the contract be signed by both parties." Id. Our holding today, however, emphasizes that there *is* a requirement that the agreement be in writing. If it is not in writing, there is no legally cognizable bargain to be enforced. Thus, the *Schwarzschild* rationale for enforcing the unsigned written agreement to arbitrate is inapplicable to the instant case in which there was no written agreement.

Cir. 1987); *Weyerhaeuser Co.* v. *Western Seas Shipping Co.*, 743 F.2d 635, 637 (9th Cir.), cert. denied, 469 U.S. 1061, 105 S. Ct. 544, 83 L. Ed. 2d 431 (1984); *Medical Development Corporation* v. *Industrial Molding Corporation*, 479 F.2d 345, 348 (10th Cir. 1973); *Fisser* v. *International Bank*, 282 F.2d 231, 233 (2d Cir. 1960). This writing requirement also is noted in commentary on arbitration. "The requirement that the arbitration clause be in writing in order that it may be considered enforceable is set forth in the United States Arbitration Act, the Uniform Arbitration Act and the statutes of most states. This provision renders invalid mere oral arbitration agreements." M. Domke, supra, § 6.01, p. 73; see also R. Rodman, supra, § 4.5, pp. 93–94; M. Bernstein, Private Dispute Settlement: Cases and Materials on Arbitration (1968) p. 69; 5 Am. Jur. 2d 529–30, Arbitration and Award § 13. These authorities emphasize that a statutory requirement of a written arbitration agreement must be enforced strictly.

The strict enforcement of the writing requirement in § 52-408 is supported by policy considerations. First, and most apparent, is that this requirement eliminates the problems of proving an oral agreement.[8] It is likely that the parties' understanding of a purported oral agreement to arbitrate will differ. The content of the agreement would then have to be determined by the court and this would not be as efficient or as easy as establishing the existence and content of a written agreement. The process of proving an oral agreement would not foster the stated purpose of arbitration of

[8] It was suggested at oral argument that General Statutes § 52-408 serves as a statute of frauds. While in some respects this is an appealing argument, it is not an accurate characterization. Our statute of frauds provides that certain contracts, if not in writing, are unenforceable. See General Statutes § 52-550; *Scinto* v. *Clericuzio*, 1 Conn. App. 566, 568, 474 A.2d 102 (1984). Our interpretation of the arbitration statute, however, is slightly different; that is, only written arbitration agreements are enforceable and all others are void.

" 'avoiding the formalities, delay, expense and vexation of ordinary litigation.' " *O & G/O'Connell Joint Venture* v. *Chase Family Limited Partnership No. 3,* 203 Conn. 133, 145, 523 A.2d 1271 (1987), quoting *Bridgeport* v. *Bridgeport Police Local 1159,* 183 Conn. 102, 107, 438 A.2d 1171 (1981); *Administrative & Residual Employees Union* v. *State,* 200 Conn. 345, 349, 510 A.2d 989 (1986); see also *International Brotherhood of Teamsters* v. *Shapiro,* supra, 62.

Second, because the parties must memorialize their agreement to arbitrate, it also is likely that they will establish, either separately or within the agreement to arbitrate, a written submission setting forth the arbitrable issues. It is from the submission alone that the arbitrator receives his or her authority, and the submission largely controls the parties' rights on judicial review. See *American Universal Ins. Co.* v. *DelGreco,* 205 Conn. 178, 185, 530 A.2d 171 (1987). The submission is unrestricted unless otherwise agreed by the parties. See *O & G/O'Connell Joint Venture* v. *Chase Family Limited Partnership No. 3,* supra, 154; *Ramos Iron Works, Inc.* v. *Franklin Construction Co.,* 174 Conn. 583, 588–89, 392 A.2d 461 (1978); cf. *Board of Trustees* v. *Federation of Technical College Teachers,* 179 Conn. 184, 193, 425 A.2d 1247 (1979). As long as the arbitrator rules within the parameters of the submission and provides the parties with a fair hearing, the award will not be set aside on judicial review. See *American Universal Ins. Co.* v. *DelGreco,* supra, 186; see generally *Darien Education Assn.* v. *Board of Education,* 172 Conn. 434, 374 A.2d 1081 (1977). The AAA itself recognizes the importance of a written submission. The alternative dispute resolution procedures promulgated by the AAA provide for a joint submission in writing. American Arbitration Association, Alternative Dispute Resolution Procedures (1984).[9]

---

[9] The record does not disclose why the parties in the instant case did not fill out the blank submission form that the AAA had provided to them.

Thus, requiring a written agreement to arbitrate also encourages the parties to devise a written submission, which will clarify the rights of the parties for the purposes of both arbitration and judicial review.[10]

In summary, we conclude that an agreement to arbitrate must meet the requirements of the arbitration statute, including the requirement that the agreement be in writing, or it is invalid. This principle is supported by the language and organization of the statute, case law and commentary on the subject, and policy considerations.

As a final matter, the defendant argued in her brief that the plaintiffs' failure to bring into question the validity of the arbitration agreement before the award was rendered amounted to a waiver of the right to raise that issue after the award. We disagree. The authority of the arbitrator is a subject matter jurisdiction issue, and as such it may be challenged at any time prior to a final court judgment. *International Brotherhood of Teamsters* v. *Shapiro,* supra, 65; *Textile Workers Union* v. *Uncas Printing & Finishing Co.,* 20 Conn. Sup. 91, 96, 125 A.2d 236 (1956). Thus, the plaintiffs' challenge to the arbitrator's authority after the award was timely.

Therefore, we conclude that the trial court properly vacated the arbitration award in this case.

There is no error.

In this opinion the other justices concurred.

---

[10] For example, the execution of the written submission of the issues to be arbitrated would have included the claims of the parties, including Philip Bennett's claim of loss of consortium. The arbitrator's memorandum of decision does not even refer to this claim.