[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The above-captioned matter comes before the court upon the application of the plaintiff, Blakeslee Prestress, Inc. ("Blakeslee"), to correct and confirm an arbitration award and the motion of the defendant, Vincent Longobardi, d/b/a Candid CT Page 276 Associates ("Longobardi"), to vacate the award.
The arbitration award at issue, Exhibit J, bears the caption "Blakeslee Prestress, Inc. and Candid Associates, Inc., Case No. 121101087." (Emphasis supplied).
The plaintiff moves to correct the award to reflect the fact that there is no entity known as Candid Associates, Inc., and that the award should bear the name of and be binding against Vincent Longobardi, d/b/a Candid Associates. Longobardi claims in his motion to vacate the award that the submission of the dispute to arbitration was invalid because there was no written agreement to arbitrate binding on Vincent Longobardi, d/b/a Candid Associates.
The arbitration at issue was conducted under the auspices of the American Arbitration Association upon a demand for arbitration filed by Blakeslee on January 8, 1987, with regard to a construction contract to build an office addition to the property known as 127 Washington Avenue in North Haven. The claim for arbitration stated the nature of the dispute to be as follows:
 Breach of Contract including Respondent's failure to make payments due and owing under the Contract, failure to recognize and pay Claimant for the performance of extra work and interference with Claimant's performance of work which forced Claimant to work in an inefficient manner, forced Claimant to accelerate work, delayed the performance of Claimant's work and required Claimant to incur substantial additional and extra costs.
Blakeslee attached to the claim for arbitration a contract provision providing for arbitration of disputes. The construction contract from which that clause was excerpted was not, in fact, signed by any party other than Blakeslee (Ex. A), however, Longobardi engaged the services of Attorney Thomas P. McKeon, who filed an answer and counterclaim in the arbitration proceeding on behalf of "Candid Associates" (Ex. D). In the counterclaim, the respondent alleged that Blakeslee had "failed to complete the work provided for in the written contract between the parties . . ." and sought money damages. (Ex. D).
The arbitrators held approximately thirty-six hearings, and on August 26, 1991 they issued an award awarding Blakeslee $654,717.00 as to is claim and stating that "on the counterclaim of Candid Associates, Inc. We award Candid Associates, Inc. the sum of $48,633.00 to be paid by Blakeslee Prestress, Inc." The arbitrators also apportioned the expenses of arbitration of approximately $39,000.00 equally between the parties. CT Page 277
At various junctures in the course of the proceedings, Attorney McKeon signed stipulations on behalf of "the respondent" in the arbitration. (Ex. E, F, G, H, I).
At the hearing as to the instant applications, it was established that there has never been a legal entity named Candid Associates, Inc., that the AlA contract signed by Blakeslee and designated as Exhibit A is the contract relied on in the counterclaim for arbitration, that Exhibit A was prepared by an architect retained by Longobardi, doing business as Candid Associates, that Exhibit A was sent at Longobardi's request to Blakeslee for signature, and that among the general conditions adopted in that contract was an agreement to arbitrate disputes in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association. Mr. Longobardi testified that he is the owner of 127 Washington Avenue and that he, doing business as Candid Associates, was the "owner" of the property identified in Exhibit A. Mr. Longobardi further testified that he had attended the arbitration hearings and that he regarded them as involving his claims against Blakeslee and Blakeslee's claims against him, and that in fact Candid Associates is a trade name under which he was doing business and that Attorney McKeon was his legal representative in connection with the arbitration.
DISCUSSION
The defendant did not raise at any time during the arbitration the arbitrability of the dispute. The award was rendered on August 26, 1991 and was received by counsel on August 29, 1991. The motion to vacate the award was not filed until November 4, 1991. Section 52-420 C.G.S. provides that "[n]o motion to vacate, modify or correct an award may be made after thirty days from the notice of the award to the party to the arbitration who makes the motion." Blakeslee's motion to correct and confirm the award was served on Vincent Longobardi, d/b/a Candid Associates, on September 24, 1991, alerting him within the thirty-day time period that Blakeslee meant to enforce the award against him. It would seem that the issues raised in the motion vacate are nonjusticiable pursuant to 52-420 C.G.S., however, because the Supreme Court has stated in Bennett v. Meader,208 Conn. 352, 364 (1988), that the authority of the arbitrators is an issue of subject matter jurisdiction and may be challenged at any time prior to a final court judgment, the court will consider the merits of the defendant's claim.
The holding in Bennett v. Meader, supra, is that an arbitration award is enforceable only if the agreement to arbitrate satisfies the requirements of 52-408 C.G.S. The provisions of that statute are, in relevant part, as follows: CT Page 278
 An agreement in any written contract, or in a separate writing executed by the partners to any written contract, to settle by arbitration any controversy thereafter arising out of such contract, or out of the failure or refusal to perform the whole or any part thereof . . . or an agreement in writing between two or more persons to submit to arbitration any controversy existing between them at the time of the agreement to submit, shall be valid, irrevocable and enforceable, except when there exists sufficient cause at law or in equity for the avoidance of written contracts generally.
The defendant reads 52-408 to mean that absent a signature by both parties on the construction contract incorporating the arbitration clause, the arbitration is unenforceable. This reading ignores much of the text of 52-408 and much of the discussion of the issue in Bennett. In Bennett, there was no signed contract by which the parties agreed in advance to arbitrate disputes that arose, and the parties did not execute a written submission of the issues to arbitration (which the Supreme Court tacitly viewed as a means of satisfying the requirements of52-408), "nor did the parties execute any other writing memorializing their agreement to arbitrate the dispute." Bennett, supra, at 354. In the absence of any written agreement to arbitrate, the Supreme Court held that the arbitration award was unenforceable. The Supreme Court noted the policy reasons for requiring a writing: 1) to avoid varying understandings as to the existence of an agreement to arbitrate and the content and scope of the agreement, and 2) to foster creation of a clear statement of the issues to be submitted to the arbitration, the "submission" which frames the scope of the authority of the arbitration and controls the parties' rights upon judicial review. Bennett, supra, at 362-3.
In Bennett, at 361, the Supreme Court specifically preserved its ruling in Schwarzschild v. Martin, 191 Conn. 316, 317 (1987), that 52-408 "did not necessarily require that the agreement contain the signatures of both parties, but the agreement had to be a `written contract' or `separate writing.'" In Schwarzchild, the party who had signed the contract containing the arbitration clause was the party appealing its enforceability after the award, a different circumstance than is present in the case at bar. The Court in Schwarzschild, however, did not end its analysis as to the existence of a written agreement to arbitrate by noting the movant's signature, but also relied on the fact that the movant had submitted the issues to arbitration by filing a petition for arbitration. CT Page 279
The Supreme Court did not have occasion in Bennett to determine what sort of agreements other than those bearing signatures of both parties would satisfy the requirement of52-408, because in Bennett there was no written agreement or written submission at all, as the parties had failed to fill out the written submission agreement provided by the American Arbitration Association. The court's discussion of the absence of a written submission, however, supports the conclusion that where a person has signed a document submitting an issue to an arbitrator under circumstances that acknowledge the existence of an agreement to arbitrate, the requirements of 52-408 are satisfied.
Candid Associates, not "Candid Associates, Inc.," submitted a counterclaim against Blakeslee seeking to arbitrate its claim. This counterclaim was set forth in a written submission to arbitration, Exhibit D, signed by Attorney McKeon on behalf of Candid Associates. The court finds that Attorney McKeon was representing Mr. Longobardi in the guise of his trade name, Candid Associates, and that he submitted the dispute identified in the counterclaim to arbitration with full authority to do so. The counterclaim alleges that there was a written contract between "the parties" and Candid Associates claims in its counterclaim to be seeking enforcement of that written contract. Mr. Longobardi has identified the construction contract incorporating the arbitration clause as the only contract which he, as owner of the office building at 127 Washington Avenue, had with Blakeslee, and there is therefore no ambiguity as to which agreement he referred to in submitting the dispute to arbitration.
Because there has never been at any time relevant hereto a legal entity called Candid Associates, Inc., there is no possibility that Attorney McKeon was representing a corporation and not Mr. Longobardi, d/b/a Candid Associates, when he signed the submission to the arbitration, and there is no claim that McKeon was not duly authorized to file the submission recognizing the agreement to arbitrate disputes under the construction contract. The submission and its recognition of Exhibit A constituted the requisite writing.
The requirements of 52-408 are satisfied, and the motion to vacate the award is denied.
APPLICATION TO CORRECT
Section 52-419 provides that the court "shall make an order modifying or correcting the award if it finds . . . 1) . . . there has been . . . an evident material mistake in the description of any person . . . referred to in the award [or] . . . 3) if the award is imperfect in matter of form not affecting the merits of the CT Page 280 controversy" and shall modify and correct the award, "so as to effect the intent thereof and promote justice between the parties." The court finds that Candid Associates was erroneously identified as "Candid Associates, Inc." and that the intent of the parties, that is the owner of the premises where construction was to take place and the contractor, was that disputes between them be determined by arbitration. Accordingly, the court hereby modifies the award to identify the respondent and counterclaimant as "Candid Associates."
MOTION TO CONFIRM
The corrected award must, pursuant to 52-417 C.G.S., be confirmed "unless the award is vacated, modified or corrected as prescribed in sections 52-418 and 52-419." The correction of a misnomer is not the sort of correction that precludes the application of 52-417 C.G.S. The movant as to the motion to vacate has alleged only the claims adjudicated above, and has not alleged any of the statutory grounds for vacating the award enumerated in 52-418 or 419 C.G.S.
Accordingly, the award is confirmed as corrected.
Beverly J. Hodgson Judge of the Superior Court