[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
I. FACTS
On April 1, 1992, the plaintiff Paul A. Spinnato opened an account with the defendants People's Securities, Inc. for the purpose of buying and selling securities. The plaintiff was presented with a document entitled "New Account Request." A photocopy of that document is attached to the plaintiff's complaint as Exhibit A.
Exhibit A contained four dark spaces the first of which was labeled Customer Information, the second Service Instructions, the third Signature, and the fourth For Internal Use Only. CT Page 6759
The space under the dark line containing the word "Signature" in white block print read as follows:
 "I(we) request the People's Securities, Inc. open and maintain an account for me(us) for the purchase and sale of securities. I(we) have read, understand and agree to the terms of the Customer Agreement set forth on the reverse side of this document. . . . ."
On the reverse side of the document paragraph 16 read as follows:
 "Any controversy arising out of or relating to Customer's account in connection with transactions pursuant to this Agreement or the breach thereof shall be settled by arbitration in accordance with the rules of the National Association of Securities Dealers Inc. Initiation of arbitration may be made by written demand for arbitration or notice of intention to arbitrate served by either party upon the other. Judgment upon any award rendered by the arbitrators may be entered in any court having jurisdiction thereof. This Agreement does not prohibit Customer from pursuing any claim or claims arising under the federal securities laws in any court of competent jurisdiction where this agreement to arbitrate would be void under the securities laws."
Relying on the quoted arbitration language, People's Securities, Inc., on December 18, 1992, filed for arbitration with the National Association of Security Dealers Inc. for the settlement of a claim for damages arising out of certain alleged misrepresentations made by the plaintiff in connection with a stock transaction made by the defendant for the account of the plaintiff.
On February 22, 1993, the plaintiff filed a motion to decline use of the forum pursuant to rule 12(b) of the Uniform Code of Arbitration seeking to postpone or cancel the arbitration on the basis that the arbitration committee did not have subject matter jurisdiction. Plaintiff's motion was denied. The parties proceeded to arbitrate the matter before the NASD Panel on January CT Page 6760 6, 1994 at the NASD offices in New York City. The plaintiff appeared at said arbitration hearing with his counsel and voluntarily submitted counterclaims for resolution by the arbitration panel. On February 9, 1994, after considering the pleadings, the testimony, and the evidence presented at the hearing and the post-hearing submissions, an award was issued by the NASD arbitration panel in favor of the defendant, People's Securities, Inc. in the amount of $24,000.00 plus $2,400.00 in interest for a total of $26,400.00.
On March 7, 1994, the plaintiff filed this application to vacate or correct the arbitration award claiming that the award should be vacated or corrected for the reasons set forth in § 52-418et seq. of the Connecticut General Statutes.
Among other claims the plaintiff claimed that the arbitrators had been guilty of misconduct in refusing to postpone or cancel the hearing for significant cause, claiming that there was no written submission agreement. The court holds that this claim rises or falls on the court's finding on the basic underlying issue of whether or not there was a written agreement to arbitrate.
ISSUE
The plaintiff argues for vacation of the arbitration award for reasons A through H set forth in paragraph 6 of the plaintiff's complaint. The court holds for the defendant either factually, legally or both as to all matters set forth in the plaintiff's complaint except the claim set forth in paragraphs 6(a) and 6(g) which warrant further discussion.
In paragraph 6(a) the plaintiff alleged:
 "The arbitrators have exceeded their powers or so imperfectly executed them that a mutual, final and definite award upon the subject matter was not made in that there was not a written agreement to arbitrate as required by § 52-408 of the Connecticut General Statutes."
The plaintiff is making essentially the same claim in paragraph 6(g) when it is alleged:
 "The submission agreement purportedly signed by the plaintiff was not, in fact, executed by CT Page 6761 the plaintiff."
HOLDING OF THE COURT
Although the purported signature of the plaintiff is difficult to read because he signed on the dark line, the plaintiff did not deny signing the New Account Request. Based upon all of the facts before it, the court concludes that the plaintiff did in fact sign the document.
There is no arguing with the fact that even if the plaintiff signed the request he signed it above the language which would have incorporated paragraph 16 and the obligation to arbitrate. There is no indication that the plaintiff had a deliberate intention to avoid an arbitration requirement. The facts are unclear as to whether the plaintiff knew that in signing the agreement he was agreeing to arbitrate.
The law in Connecticut concerning arbitration agreements clearly requires that the agreement be in writing. In Bennett v.Meader, 208 Conn. 352, 359 (1988) the court held that "an agreement to arbitrate must meet the requirements of the arbitration statute, including that the agreement be in writing, or it is invalid." However, the Supreme Court has also held in Schwarzchild v. Martin,191 Conn. 316, 321 (1983) that:
 "Nowhere in the statute [52-408 et seq.] is found the specific requirement urged on us by the defendant that the contract be signed by both parties. The statutes require only that the agreement between the parties be contained in a `written contract,' or `separate writing.'"
The fact is clear that there was a written agreement to arbitrate contained in paragraph 16 of the "New Account Agreement." The fact is clear that the "New Account Agreement" was signed by the plaintiff although it was signed above the language which incorporated the condition on the back of the written agreement. The facts are clear that the plaintiff had a full and ample opportunity to examine the agreement. The facts are clear that the plaintiff attempted to block the arbitration by filing an application under rule 12(b) of the Uniform Code of Arbitration which application was denied. Finally the plaintiff participated in the arbitration including the submission of counterclaims before CT Page 6762 the NASD arbitration panel on January 6, 1994 at the NASD offices in New York City. The court further finds that the plaintiff arbitrated under protest and, in fact, refused to execute a submission presented by the NASD agreement.
There is ample evidence that both parties knew or had the opportunity to know the terms of the agreement and that both parties signed the agreement although the plaintiff signed above the applicable language. Parties may become bound by the terms of the contract, even though they do not sign it, where their assent is otherwise indicated, such as by acceptance of the benefits of the contract, 17 Am.Jur.2d Contracts § 70. Despite the fact that the plaintiff signed the agreement in the wrong place, the plaintiff had ample opportunity to know its terms, and did participate in the arbitration hearing. The parties cannot accept benefits under a contract fairly made and at the same time question its validity. Mozzochi v. Luchs, 35 Conn. Sup. 19, 23 (1977).
Accordingly, the court finds that there was a written agreement to arbitrate and that the plaintiff agreed to that agreement, regardless of the location of his signature. The plaintiff is bound by the results of the arbitration. The court confirms the arbitration award.
By the court, Kevin E. Booth, Judge