[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION RE:APPLICATION FOR ORDER TO PROCEED WITH ARBITRATION
The plaintiff instituted the present action by way of an application for an order to proceed with arbitration under the uninsured motorist provisions of a policy of insurance issued by the defendant. The plaintiff's application alleges that he is an insured under a policy of insurance issued by the defendant which provides uninsured motorist benefits. Plaintiff further alleges that the defendant agreed to resolve a dispute between the parties by arbitration and thereafter failed to do so. The defendant asserts that it never agreed to arbitrate the issues.
The policy of insurance issued by the defendant contains a provision entitled "Arbitration" which provides, in part, as follows:
"If we and an `insured' do not agree:
 1. Whether that person is legally entitled to recover damages under Part C; or
 2. As to the amount of damages, then the matter may be arbitrated. However, both parties must agree to arbitration."
The policy then provides for the manner in which the arbitrators are to be chosen, the allocation of the expenses, location of the arbitration and the rules of procedure and evidence that will apply and then states:
 "any decision agreed to by the arbitrator(s) will be binding as to:
1. Whether the `insured' is legally entitled to CT Page 12655 recover damages; and
2. The amount of damages."
In May of 1994, plaintiff's counsel wrote to the defendant making a demand for arbitration and advised the defendant that it appointed a named arbitrator pursuant to the policy of insurance. In June of that year, counsel for the defendant wrote to plaintiff's counsel advising him that he had been hired to represent the defendant in the defense of the uninsured motorist claim. At that time, counsel for the defendant also advised the plaintiff's attorney that he had suggested an arbitrator to his client and, as soon as the choice is approved, he would notify `plaintiff's counsel. In July, counsel for the defendant wrote to an attorney requesting that the attorney serve as an arbitrator and in July also wrote to the same attorney thanking her for agreeing to act as an arbitrator and advised her that the arbitrator appointed by the plaintiff would be contacting her. On July 22, 1994, counsel for the defendant wrote to counsel for the plaintiff advising him that he had selected the named arbitrator and suggested that the two arbitrators should confer on the selection of a neutral arbitrator. In August of 1994, counsel for the defendant wrote to counsel for the plaintiff advising him that prior to choosing a date for a hearing he would like to schedule a "statement under oath" from the plaintiff and requested certain records before selecting the date for the arbitration. In May of 1995, counsel for the defendant wrote to counsel for the plaintiff informing him that the offer to arbitrate the claim is being withdrawn pursuant to the terms of the policy. Based upon the foregoing facts, the plaintiff claims that the defendant agreed to arbitrate the dispute and is therefore compelled to do so. The defendant, on the other hand, asserts that there was never any agreement to arbitrate; that the offer to arbitrate was never accepted; and that there was no written agreement to arbitrate the dispute.
General Statutes § 52-408 provides as follows:
 "An agreement in any written contract, or in a separate writing executed by the parties to any written contract, to settle by arbitration any controversy thereafter arising out of such contract, or out of the failure or refusal to perform the whole or any part thereof, or a written provision in the articles of association or bylaws of an association or corporation of which both CT Page 12656 parties are members to arbitrate any controversy which may arise between them in the future, or an agreement in writing between two or more persons to submit to arbitration any controversy existing between them at the time of the agreement to submit, shall be valid, irrevocable and enforceable, except when there exists sufficient cause at law or in equity for the avoidance of written contracts generally."
In Bennett v. Meader, 208 Conn. 352 (1988), the court held that the requirements of the above quoted statute are mandatory and that the agreement to arbitrate must be in writing. The court further noted (pp. 362-363) that the strict enforcement of the writing requirement as supported by policy considerations, to wit: the elimination of the problems of proving an oral agreement including its content and scope, and the establishment of a written submission setting forth the arbitrable issues from which the arbitrator receives his or her authority.
The arbitration clause and the policy of insurance here at issue defines the arbitration panel's authority. See Lawrence v.New Hampshire Insurance Co., 29 Conn. App. 484, 495 (1992). Similarly, the provisions contained in the policy for the composition and selection of the arbitration panel, the allocation of expenses, the place where the arbitration would take place, the rules of evidence that would apply and defining the arbitrable issues clearly satisfies the policy considerations set forth inBennett v. Meader, supra.
The issue is therefore whether parties who have agreed in writing, via the policy of insurance, to arbitrate under an established procedure which defines the arbitrable issues, must also, in order to satisfy General Statutes § 52-408, execute a separate writing indicating their agreement to utilize the arbitration provisions set forth in the policy of insurance.
In Joseph Muller Corp., Zurich v. Commonwealth Petrochemicals,Inc., 334 F. Sup. 1013, 1019-20 (SDNY 1971), the court, in analyzing the Federal Arbitration Act, 9 U.S.C. § 2, stated: "[N]o single integrated agreement is required to the exclusion of other binding events under generally operative principals of contract law. The single inquiry is whether `one party' agreed with the `other party' to pursue `arbitration' and whether it is memorialized in written words." CT Page 12657
In the present case, the policy of insurance, coupled with the correspondence between counsel for the respective parties, clearly establishes that the parties agreed to arbitrate the dispute between them in accordance with the policy of insurance. There is no necessity that the agreements between the parties be contained in one, and only one, fully integrated document. The agreement to arbitrate can be established by correspondence. Balch v. Zukerman,7 CSCR 360, 361 (March 3, 1992, Dranginis, J.); M. Domke,
Commercial Arbitration (Rev. Ed. Wilner 1993) § 6:01; R. Rodman,
Commercial Arbitration (1984) § 4.5.
There is no claim that the attorneys for the defendant were not authorized to agree to arbitration and the defendant is bound by the procedural acts of its counsel. Varley v. Varley, 189 Conn. 490,493 (1983); Blakeslee V. Prestress, Inc. v. Longobardi,
Superior Court, J.D. New Haven, Jan. 23, 1992, Hodgson, J. The arbitration provisions are contained in the written words of the policy of insurance and the agreement to utilize those provisions are contained in the written words of the letters exchanged between counsel. Under such circumstances, the "written contract" or "separate writing" requirement of General Statutes § 52-408 is satisfied and, once made, the agreement is "valid, irrevocable and enforceable". Accordingly, the plaintiff's application is hereby granted.
Rush, J.