[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The present case arises from an automobile accident involving the plaintiffs, Dana S. Bisconti and Michael Bisconti, and the defendants, Edward McEachin and John Colby. The parties proceeded to arbitration on October 26, 1999, and on November 19, 1999 the arbitrators awarded damages to the plaintiffs.
The plaintiffs filed the present application to confirm the arbitration award on January 6, 2000 based on an agreement between the parties on August 30, 1999, to enter into arbitration. In support of the existence of the agreement, the plaintiffs have appended a letter to the arbitrator dated August 30, 1999.
The defendants filed an objection to the application to confirm arbitration award on the ground that there was no written agreement between the parties for the arbitration and further, there was no stipulation for the arbitration to be binding. The defendants also filed a motion to vacate the arbitration award pursuant to General Statutes § 52-408 on the ground that there was no written agreement to arbitrate this matter and therefore the arbitration award is not binding on the parties. The plaintiffs subsequently filed a memorandum in opposition to the defendants' motion to vacate the arbitration award, arguing that an agreement to arbitrate exists as a "separate writing" under General Statutes § 52-408 by virtue of the correspondence between the parties, appended as exhibits A, B, C, D, E, F and G.
"Arbitration is the voluntary submission, by the interested parties, of an existing or future dispute to a disinterested person or persons for final determination." (Internal quotation marks omitted.) Fink v.Golenbock, 238 Conn. 183, 194, 680 A.2d 1243 (1996). "Arbitration is favored by courts as a means of settling differences and expediting the resolution of disputes. . . . [A]rbitration awards are generally upheld and . . . [courts] give great deference to an arbitrator's decision since arbitration is favored as a means of settling disputes." (Internal CT Page 7232 quotation marks omitted.) Bridgeport Firefighters Assn. v. Bridgeport,48 Conn. App. 667, 670, 711 A.2d 1188 (1998).
General Statutes § 52-408 provides that "[a]n agreement in anywritten contract, or in a separate writing executed by the parties to any written contract, to settle by arbitration any controversy thereafter arising out of such contract . . . shall be valid, irrevocable and enforceable, except when there exists sufficient cause at law or in equity for the avoidance of written contracts generally." (Emphasis added.) Id. "[A]n agreement to arbitrate must meet the requirements of the arbitration statute, including the requirement that the agreement be in writing, or it is invalid." Bennett v. Meader, 208 Conn. 352, 364,545 A.2d 553 (1988).
"Although there is no particular form of words required to form an agreement to arbitrate, the intent of the parties that arbitration be the exclusive method for the settlement of disputes arising under the contract must be clearly manifested. This express intent by both parties to enter into the arbitration agreement is essential to its existence. . . . Domke, Commercial Arbitration § 5.01, p. 49. An agreement to arbitrate must be clear and direct and not depend on implication. Id." (Emphasis omitted; internal quotation marks omitted.) Harry Skolnick Sons v. Heyman, 7 Conn. App. 175, 179, 508 A.2d 64 (1986). Accord Jacobv. Seaboard, Inc., 28 Conn. App. 270, 273, 610 A.2d 189 (1992).
"The existence of a contract to arbitrate is a question for the court."Balch v. Zukerman, Superior Court, judicial district of Litchfield, Docket No. 055398 (March 3, 1992, Dranginis, J.) (7 C.S.C.R. 360). See also Atkinson v. Sinclair Refining Co., 370 U.S. 238, 241, 82 S.Ct. 1318,1320, 8 L.Ed.2d 462, 465-66 (1962); Torrington Co. v. Metal Prod. WorkersUnion Local 1645, 347 F.2d 93, 96 (1965), cert. denied, 382 U.S. 940,86 S.Ct. 394, 15 L.Ed.2d 351 (1965). "The intention of the parties manifested by their words and acts is essential to determine whether a contract was entered into and what its terms were. . . ." (Internal quotation marks omitted.) Finley v. Aetna Life Casualty Co.,202 Conn. 190, 199, 520 A.2d 208 (1987).
The defendants object to the plaintiff's application to confirm the arbitration award on the ground that a written contract to arbitrate is required, otherwise the arbitration award is invalid and unenforceable. The plaintiffs argue that the agreement was memorialized in the correspondence between the parties appended as exhibits A through G and therefore satisfy the "separate writing" requirement of General Statutes § 52-408 and Bennett v. Meader, supra, 208 Conn. 352.
The Supreme Court in Bennett v. Meader, supra, 208 Conn. 352, did not CT Page 7233 explicitly state what type of agreements would satisfy the requirement of General Statutes § 52-408, because that case did not involve a written agreement or written submission at all. "Neither the plaintiffs nor the defendant completed the submission agreement provided by the [American Arbitration Association], nor did the parties execute any other writing memorializing their agreement to arbitrate the dispute." Id., 354. There is Superior Court case law, however, that holds that "[t]he agreement to arbitrate can be established by correspondence." Paoletti v.Preferred Mutual Co., Superior Court, judicial district of Fairfield at Bridgeport, Docket No. 323820 (November 1, 1995, Rush, J.). See alsoBalch v. Zukerman, supra.
In the present case, the correspondence between the parties indicates the formation of a contract to submit this matter to binding arbitration. Specifically, on August 30, 1999, Edward G. Fitzpatrick, attorney for the plaintiffs, sent a letter to Thomas L. Brayton, Esq. confirming that he will serve as the one-man arbitrator in this case. (See Plaintiffs' Exhibit A.) This letter was "carbon copied" to the defendants' attorney Donn A. Swift. (Id.) The parties subsequently agreed on the submission of exhibits to the arbitrator and the documents were forwarded to Brayton on September 13, 1999 and September 17, 1999. See Plaintiffs' Exhibits B and C. The arbitration hearing was rescheduled, at the request of the defendants, to October 26, 1999. (See Plaintiffs' Exhibit D.) The plaintiffs forwarded updated medical reports to Brayton on October 15, 1999. (See Plaintiffs' Exhibit E.)
On October 19, 1999, the defendants' attorney proffered an exhibit by stating, "[i]n terms of the upcoming arbitration the only exhibit I plan on offering is the report of Dr. Ferraro dated November 11, 1997. Please let me know if you have any objection to the offering of this exhibit." Plaintiffs' Exhibit F. On October 21, 1999, the plaintiffs responded to the defendants' request for the proffered exhibit for the arbitration with no objection. (See Plaintiffs' Exhibit G.)
The defendants' own language suggests the existence of a contract to enter into binding arbitration. The defendants state in their objection that "[d]uring the pendency of the court action the parties agreed to submit the matter to Attorney Thomas L. Brayton for an arbitration hearing." (Defendants objection p. 1.) Further, the defendants by their own actions, demonstrated the existence of an agreement to arbitrate by appearing at the arbitration hearing and presenting testimony and exhibits.
The court is of the opinion that the parties reached an oral agreement to arbitrate and that the agreement was confirmed and memorialized in writing by virtue of the correspondence between attorneys Fitzpatrick and CT Page 7234 Swift. (See Plaintiffs' Exhibits A, B, C, D, E, F and G.) Further, the defendants' own language and actions demonstrate the existence of an agreement to arbitrate. Accordingly, a valid contract to submit to binding arbitration was formed and the requirements of General Statutes § 52-408 and Bennett v. Meader, supra 208 Conn. 352, have been satisfied.
Because the parties entered into a valid agreement to arbitrate as a matter of law, the agreement cannot be terminated unilaterally. "[A]n agreement in writing between two or more persons to submit to arbitration any controversy existing between them at the time of the agreement to submit, shall be valid, irrevocable and enforceable, except when there exists sufficient cause at law or in equity for the avoidance of written contracts generally." General Statutes § 52-408. "This means that an arbitration agreement, like any other, can be declared void for fraud, misrepresentation, duress or undue influence, among other reasons not pertinent here." Dewart v. Northeastern Gas Transmission Co.,140 Conn. 446, 449, 101 A.2d 299 (1953).
"An arbitration award may be vacated, modified or corrected if the award violates any one or more of the proscriptions contained in General Statutes § 52-418 (vacating an award) or § 52-419 (modifying or correcting an award). In order to vacate, modify or correct such award, however, an application must be made to the Superior Court within thirty days from the time the party seeking such relief receives notice of the award. See General Statutes § 52-420 (b)." Id., 137-38. In the present case, the defendants have not made such an application pursuant to those statutes. Even if the defendants had raised one of the reasons for declaring the agreement void, the court would lack jurisdiction because the defendants failed to move to vacate within thirty days of the arbitration award. See General Statutes § 52-420 (b).
In accord with its findings that the parties had a valid agreement to enter into binding arbitration, memorialized in writing by virtue of their correspondence, and that no justifiable reason exists to declare the agreement void, the court denies defendant's motion to vacate and confirms the arbitration award by attorney Brayton dated November 19, 1999.
THOMAS G. WEST, J.