MARK PINARD *v.* DANDY LIONS, LLC, ET AL.

DANDY LIONS, LLC, ET AL. *v.* MARK PINARD
(AC 30581)

Bishop, DiPentima and Peters, Js.

---

Argued November 30, 2009—officially released February 16, 2010

*Scott R. Chadwick*, for the appellant (plaintiff in the first case, defendant in the second case).

*Mark S. Shipman*, with whom, was *C. Scott Schwefel*, for the appellees (defendants in the first case, plaintiffs in the second case).

*Opinion*

DiPENTIMA, J. In this appeal, arising out of a commercial lease dispute, we address the question of whether an unwritten agreement to arbitrate made in

open court complies with General Statutes § 52-408. We conclude that it does not. The plaintiff, Mark Pinard, appeals from the judgments of the trial court denying his application to confirm an arbitration award and granting the application of the defendants, Dandy Lions, LLC, Sally Tyszka and Mark Tyszka to vacate the arbitration award.[1] Specifically, he claims that the court improperly concluded that the parties' arbitration agreement was unenforceable because it was not in writing. We affirm the judgments of the trial court.

The following facts and procedural history in this protracted litigation are not in dispute. On June 19, 1998, Dandy Lions, LLC, entered into a lease agreement with Donald B. Werner for 29-35 Poquonock Avenue in Windsor. The lease contained no provision relating to arbitration. Subsequently, Werner died, and the plaintiff became the executor of his estate. The plaintiff later became the owner of the property and the landlord under the lease agreement with the defendants. Litigation began between the parties in June, 2004, when the plaintiff filed an application for a prejudgment remedy against the defendants, alleging, inter alia, breach of the lease agreement. On November 2, 2005, the plaintiff filed an amended complaint, alleging, inter alia, breach of contract, replevin, conversion, negligence, recklessness, fraudulent conveyance and misrepresentation. Subsequently, on January 30, 2006, the defendants filed an answer and counterclaim.

On October 19, 2007, a hearing was held before Judge Wiese. The court considered pretrial matters, including

---

[1] We note that the plaintiff filed his application to confirm the award in Docket No. CV-07-4034047-S, in which the defendants thereafter filed a motion to vacate the award. Later, however, the defendants commenced a separate action, Docket No. CV-07-4034311-S, in which they filed an application to vacate the award. The cases were consolidated for trial. For convenience, we refer in this opinion to Pinard as the plaintiff, and to Dandy Lions, LLC, and the Tyszkas as the defendants.

the withdrawal of the defendants' counterclaim and the plaintiff's motion to cite in a party defendant and then took a recess. Upon returning from the recess, the plaintiff's attorney stated on the record that the parties had agreed to proceed with a "mediation" that would be "informal in nature," during which the parties would each take time to present briefly their case to Judge Wiese in chambers.[2] The plaintiff's attorney stated that "upon hearing the presentations and reviewing the documentation, [Judge Wiese] may issue a decision that would be binding upon the parties with the understanding that it would be final in nature." The defendants withdrew the counterclaim and agreed with the plaintiff's proposal, adding that the decision could act "just as an agreement to mediate or arbitrate would result in an arbitrator's decision or a stipulation, [and] if that was not honored, there would be a right to . . . seek to enforce that in court." Judge Wiese, speaking as the court, suggested that his off the record decision be treated as an arbitration award and briefly canvassed all parties.[3] All parties orally consented to this proposal.

---

[2] Although counsel used the term "mediation," a fair reading of the record suggests that counsel intended to have an arbitration and not a facilitated negotiation.

[3] The following colloquy occurred:

"[The Plaintiff's Counsel]: Perhaps we could treat the court's decision as an award and, if it is not abided by, that one party or the other could seek its confirmation at the Superior Court so that then it would become a judgment and so on? Or am I overly complicating it?

"The Court: Confirming an arbitration award.

"[The Plaintiff's Counsel]: Yes.

"The Court: Well, how do you do it in a normal circumstance? As a personal injury case? You go to attorney X, you've agreed you're going to have a high-low binding, how do you do it then?

"[The Defendants' Counsel]: You get an arbitrator's decision and, if it's not honored, there is an expedited procedure where you seek to confirm the award in the court and have it turned into a judgment.

"The Court: Well, why can't this be the same thing? And then the case is withdrawn.

"[The Defendants' Counsel]: Right.

"The Court: In a personal injury case, you withdraw it and you do your arbitration and you enforce in that way. So, why couldn't that be the procedure here?

The parties determined further details and conducted the arbitration in chambers and off the record.

On November 5, 2007, Judge Wiese, in his capacity as an arbitrator, issued an arbitrator's ruling, finding in

"[The Defendants' Counsel]: That would be fine.

"The Court: This is a money damage case, this is not a summary process case.

"[The Defendants' Counsel]: I think that would work, right. Right. No, that would work.

"The Court: I think that's the way to do it.

"[The Plaintiff's Counsel]: Yes, Your Honor, plaintiff would agree to that framework, sure.

"The Court: Yes.

"[The Defendants' Counsel]: Yes, we would agree.

"The Court: Now, do the parties know what we're talking about here? I want to make sure everybody knows what we're talking about.

"[The Plaintiff's Counsel]: Why don't you stand up and identify yourself for the record.

"[The] Plaintiff: Mark Pinard.

"[The Defendants' Counsel]: Yeah, can you guys stand up and identify?

"[The Defendant Sally Tyszka]: Yeah.

"[The] Plaintiff: Yes, I understand.

"The Court: Yes, sir? Do you understand that, what I'm being asked to do and the rights that you're giving up?

"[The] Plaintiff: Yes.

"The Court: Yes. Okay, and this is something you want to do?

"[The] Plaintiff: Yes.

"The Court: All right. And yes, ma'am?

"[The Defendant Sally Tyszka]: Yes, I agree, as well.

"[The Defendants' Counsel]: And Mr. Tyszka, also?

"[The Defendant Mark Tyszka]: Yes, I agree.

"The Court: Well, why don't we do this. Are you prepared to start now? Would you want to start now? How long do you anticipate this would take?

"[The Plaintiff's Counsel]: In keeping with the spirit of the agreement, I'd try to keep it as brief as possible. Perhaps we start out with approximately a half hour each to make our presentation to the judge and then leave it to Your Honor as to whether you think you need any more from us at that point.

"The Court: Would I be permitted to ask questions as it's being presented to me?

"[The Plaintiff's Counsel]: I would encourage it.

"[The Defendants' Counsel]: Sure.

"The Court: Just like if a witness was here on the [witness] stand I could ask questions, I could ask questions of the attorney?

"[The Defendants' Counsel]: Absolutely."

favor of the plaintiff on counts one, two, four and six through nine, and awarding him a total of $44,846.41.[4] On November 16, 2007, the plaintiff filed an application to confirm the arbitration award with the Superior Court. On December 4, 2007, the defendants, in a separate action, filed an application to vacate or to correct the arbitration award on the ground that the arbitrator exceeded his powers and, thus, a final determination on the subject matter submitted was not properly made. On December 24, 2007, the defendants filed a motion for clarification. On January 9, 2008, Judge Wiese filed a response to the motion that briefly explained his ruling.

On November 18, 2008, the court, *Graham, J.*, denied the application to confirm the award in the first case and granted the application to vacate the award in the second case. In its memorandum of decision, the court determined that the applicable law requires that "arbitration awards be vacated if the parties have not created a written agreement before submitting the dispute to arbitration. Here, there was no such written agreement, nor have the parties established a written agreement through proof of separate writings. The parties submitted correspondence to the arbitrator only after the arbitration occurred, and that was inadequate in describing the parties' rights." This appeal followed.

We first set forth the proper standard of review. Whether or not an agreement to arbitrate made in open court on the record satisfies the requirement under § 52-408 that an arbitration agreement be in writing is a question of statutory interpretation, over which our review is plenary. See *Sastrom* v. *Psychiatric Security Review Board*, 291 Conn. 307, 316, 968 A.2d 396 (2009). "When construing a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent

---

[4] Because we agree with the court that there was no written agreement to arbitrate as required under § 52-408, we need not reach the question of whether a trial judge may act, in a pending case, as an arbitrator.

of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case, including the question of whether the language actually does apply. . . . In seeking to determine the meaning, General Statutes § 1-2z directs us first to consider the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered. . . . When a statute is not plain and unambiguous, we also look for interpretive guidance to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter . . . ." (Internal quotation marks omitted.) Id.

"Typically, judicial review of arbitration awards is narrow in scope because we favor arbitration as an alternative method of dispute resolution. . . . When questions of arbitrability implicating the existence of an agreement to arbitrate arise, however, we are presented with a question of law over which our review is de novo. . . .

"It is well established that [a]rbitration is a creature of contract. . . . [A] person can be compelled to arbitrate a dispute only if, to the extent that, and in the manner which, he has agreed so to do. . . . Because arbitration is based on a contractual relationship, a party who has not consented cannot be forced to arbitrate a dispute. . . . Moreover, even if the parties to a dispute agree to arbitrate, [i]t is the province of the parties to set the limits of the authority of the arbitrators, and the parties will be bound by the limits they have fixed. . . . Accordingly, because an arbitrator's

jurisdiction is rooted in the agreement of the parties . . . a party who contests the making of a contract containing an arbitration provision cannot be compelled to arbitrate the threshold issue of the *existence* of an agreement to arbitrate." (Citations omitted; emphasis in original; internal quotation marks omitted.) *MBNA America Bank, N.A.* v. *Boata,* 283 Conn. 381, 386–87, 926 A.2d 1035 (2007).

The plaintiff argues that the trial transcript establishes a written arbitration agreement, or, alternatively, that the totality of the circumstances, including the actions of the parties, such as voluntary participation in the arbitration and correspondence with the arbitrator subsequent to the arbitration, demonstrates that a valid and enforceable arbitration agreement exists.

Under § 52-408, "[a]n agreement in any written contract, or in a separate writing executed by the parties to any written contract, to settle by arbitration any controversy . . . or an agreement in writing between two or more persons to submit to arbitration any controversy existing between them at the time of the agreement to submit . . . shall be valid, irrevocable and enforceable, except when there exists sufficient cause at law or in equity for the avoidance of written contracts generally."

Our Supreme Court's decision in *Bennett* v. *Meader,* 208 Conn. 352, 545 A.2d 553 (1988), guides our determination. In *Bennett,* our Supreme Court stated unequivocally that "an agreement to arbitrate must meet the requirements of the arbitration statute, including the requirement that the agreement be in writing, or it is invalid. This principle is supported by the language and organization of the statute, case law and commentary on the subject, and policy considerations." Id., 364. The court further explained that "it is clear . . . that only written agreements to arbitrate are valid. Oral

agreements are not included, implicitly or explicitly, in the [statutory] description of valid arbitration agreements." Id., 359.

Here, the parties requested an "informal mediation" by the court and later agreed orally when the court suggested that Judge Wiese's informal decision act as an arbitration award. The plaintiff claims that because the agreement to arbitrate is on the record and was "memorialized in an official court transcript and can obviously be read by any reviewing authority," the statutory requirement for an arbitration agreement to be in writing is satisfied. We do not agree. The policy considerations surrounding the requirement that an arbitration agreement be in writing are not limited to proving the existence of an agreement. "It is likely that the parties' understanding of a purported oral agreement to arbitrate will differ. The content of the agreement would then have to be determined by the court and this would not be as efficient or as easy as establishing the existence and content of a written agreement. The process of proving an oral agreement would not foster the stated purpose of arbitration of avoiding the formalities, delay, expense and vexation of ordinary litigation." (Internal quotation marks omitted.) *Bennett* v. *Meader*, supra, 208 Conn. 362–63. Also, "requiring a written agreement to arbitrate . . . encourages the parties to devise a written submission, which will clarify the rights of the parties for the purposes of both arbitration and judicial review." Id., 364. Most significantly, § 52-408 plainly and unambiguously states that an agreement to arbitrate must be *in writing*, and the agreement here was not.

The parties in this case did not create, sign or submit a written arbitration agreement. The oral agreement found in the court transcript does not fulfill the requirements of an arbitration agreement under our statutory scheme. Therefore, pursuant to § 52-408, the arbitration

award could not be confirmed. The court properly granted the application to vacate the arbitration award.

The judgments are affirmed.

In this opinion the other judges concurred.