# CATHERINE FARRELL ET AL. *v.* TWENTY-FIRST CENTURY INSURANCE COMPANY
## (SC 18544)

Rogers, C. J., and Norcott, Palmer, Zarella, McLachlan and Harper, Js.

Argued April 20—officially released July 19, 2011

*Campbell D. Barrett*, with whom were *Jon T. Kukucka* and, on the brief, *Felicia C. Hunt*, for the appellants (plaintiffs).

*Andrew M. McPherson*, with whom, on the brief, was *Dennis M. Laccavole*, for the appellee (defendant).

*Opinion*

HARPER, J. In this certified appeal,[1] the plaintiffs, Catherine Farrell and Olivia Farrell, appeal from the judgment of the Appellate Court affirming the summary judgment rendered by the trial court in favor of the defendant, Twenty-First Century Insurance Company, in the plaintiffs' action to compel arbitration. *Farrell* v. *Twenty-First Century Ins. Co.*, 118 Conn. App. 757, 985 A.2d 1076 (2010). The plaintiffs claim that the Appellate Court improperly affirmed the trial court's summary judgment when there were genuine issues of material

_____

[1] We granted the plaintiffs' petition for certification to appeal limited to the following issue: "Whether the Appellate Court properly affirmed the trial court's grant of summary judgment based on its determination that there was no agreement to arbitrate." *Farrell* v. *Twenty-First Century Ins. Co.*, 295 Conn. 904, 988 A.2d 878 (2010).

fact as to whether written correspondence between the parties constituted a written agreement to arbitrate under General Statutes § 52-408[2] or as to whether that correspondence and oral communications between the parties otherwise manifested their intent to submit to arbitration. We affirm the judgment of the Appellate Court.

The record reveals the following undisputed facts and procedural history. The plaintiffs, along with John Farrell and Colm Farrell, allegedly were involved in a motor vehicle accident with an insured of the defendant on December 20, 2000. On February 25, 2002, the plaintiffs and the two other individuals filed an action against the defendant, seeking damages for personal injuries arising out of that accident. During a February, 2005 pretrial conference, the parties agreed to settle the claims of John Farrell and Colm Farrell and further agreed, in principle, to arbitrate the plaintiffs' claims. Between January, 2005, and February, 2007, counsel to the parties exchanged at least fourteen letters. The details of that correspondence will be set out in a subsequent part of this opinion.

In February, 2008, the plaintiffs filed the underlying complaint in this action against the defendant seeking a court order to compel arbitration. The defendant filed a motion for summary judgment, claiming that no written agreement to arbitrate existed between the parties. In support of the motion, the defendant submitted an affidavit from one of its authorized representatives

---

[2] General Statutes § 52-408 provides in relevant part: "An agreement in any written contract, or in a separate writing executed by the parties to any written contract, to settle by arbitration any controversy thereafter arising out of such contract . . . or an agreement in writing between two or more persons to submit to arbitration any controversy existing between them at the time of the agreement to submit . . . shall be valid, irrevocable and enforceable, except when there exists sufficient cause at law or in equity for the avoidance of written contracts generally."

attesting that there was no written agreement between the parties to arbitrate. The plaintiffs opposed the motion, claiming that the correspondence between the parties, cumulatively, constituted an enforceable agreement to arbitrate. In support of their opposition, the plaintiffs submitted copies of the correspondence and an affidavit by their attorney attesting that the parties had agreed at the pretrial conference to resolve the dispute through arbitration. The trial court rendered summary judgment in favor of the defendant, concluding that "[t]here was never a clear manifestation of an agreement to arbitrate as there was no express agreement on the terms under which arbitration would take place." The court concluded that "no reasonable minds could differ on th[is] issue and therefore there is no genuine issue of material fact between the parties."

The plaintiffs appealed to the Appellate Court, which affirmed the trial court's judgment. The Appellate Court concluded that the "correspondence, viewed in the light most favorable to the plaintiffs, indicates that the parties had an informal agreement to arbitrate, but they never agreed on any of the terms for arbitration, including the parameters for both plaintiffs' claims . . . ." *Farrell* v. *Twenty-First Century Ins. Co.*, supra, 118 Conn. App. 761. The Appellate Court rejected the plaintiffs' claim that oral communications could supply any missing terms, as well as their claim that the court could compel unrestricted arbitration under the particular facts of the present case. Id., 761–62. Therefore, the court concluded, under the requirement that agreements to arbitrate be in writing, the plaintiffs had not met their "burden of providing concrete evidence that raises a genuine issue as to the existence of a written contract to arbitrate." Id, 761. This certified appeal followed.

On appeal, the plaintiffs claim that, if the evidence were viewed in the light most favorable to them, a

genuine issue of material fact remained when the trial court granted the defendant's motion for summary judgment. Specifically, they claim that a jury could have concluded that the correspondence between the parties cumulatively constituted a written agreement to arbitrate the plaintiffs' personal injury claims. The plaintiffs contend that such an agreement need only manifest their intent to arbitrate and not the specific terms of the arbitration. Additionally, the plaintiffs claim either that the correspondence could be viewed to establish an unrestricted submission[3] or that the correspondence viewed in conjunction with oral communications regarding arbitration and potential terms of arbitration by both parties raise a genuine issue of material fact as to whether the parties had agreed to arbitrate. In response, the defendant claims that, even drawing all possible inferences in favor of the plaintiffs, no genuine issue of fact exists as to whether the parties had a written agreement to arbitrate. We agree with the defendant.

We begin with the applicable standard of review. Summary judgment rulings present questions of law; accordingly, "[o]ur review of the . . . decision to grant the defendant's motion for summary judgment is plenary." (Internal quotation marks omitted.) *Bellemare* v. *Wachovia Mortgage Corp.*, 284 Conn. 193, 199, 931 A.2d 916 (2007). "The party seeking summary judgment has the burden of showing the absence of any genuine issue [of] material facts which, under applicable principles

---

[3] In anticipation of the defendant renewing an argument raised in the Appellate Court, the plaintiffs also claim that it does not violate public policy to enforce a general, unrestricted agreement to arbitrate, as reflected in the correspondence. The defendant contends that the plaintiffs misconstrue its position, which is that it would violate public policy to view correspondence that indicates an intention to engage in restricted arbitration as an agreement to engage in unrestricted arbitration. Because we conclude that the correspondence in the present case could not have evidenced an agreement to submit to unrestricted arbitration, we need not consider these arguments.

of substantive law, entitle him to a judgment as a matter of law . . . and the party opposing such a motion must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact." (Internal quotation marks omitted.) *Bednarz* v. *Eye Physicians of Central Connecticut, P.C.*, 287 Conn. 158, 169, 947 A.2d 291 (2008). In order for a motion for summary judgment to be granted properly, the moving party must demonstrate "that it is quite clear what the truth is, and that excludes any real doubt as to the existence of any genuine issue of material fact. . . . [A] summary disposition [must] . . . be on evidence which a jury would not be at liberty to disbelieve and . . . where, on the evidence viewed in the light most favorable to the nonmovant, the trier of fact could not reasonably reach any other conclusion than that embodied in the [summary judgment]." (Internal quotation marks omitted.) *Dugan* v. *Mobile Medical Testing Services, Inc.*, 265 Conn. 791, 815, 830 A.2d 752 (2003).

Certain well established principles guide our review in the present case. A party "can be compelled to arbitrate a dispute only if, to the extent that, and in the manner which, he has agreed so to do." (Internal quotation marks omitted.) *John A. Errichetti Associates* v. *Boutin*, 183 Conn. 481, 488, 439 A.2d 416 (1981). This court has stated unequivocally that "only written arbitration agreements are enforceable and all others are void." *Bennett* v. *Meader*, 208 Conn. 352, 362 n.8, 545 A.2d 553 (1988); see also id., 359 ("[o]ral agreements are not included, implicitly or explicitly, in the description of valid arbitration agreements"). The intent that arbitration "be the exclusive method for the settlement of disputes arising under the contract must be clearly manifested. This express intent by both parties to enter into the arbitration agreement is essential to its existence. . . . An agreement to arbitrate must be clear and direct and not depend on implication." (Internal

quotation marks omitted.) *Jacob* v. *Seaboard, Inc.*, 28 Conn. App. 270, 273, 610 A.2d 189, cert. denied, 223 Conn. 923, 614 A.2d 822 (1992).

Additionally, for the written agreement to be enforceable, it is axiomatic that the parties must agree to submit to the *same* arbitration. See *Bridgeport Pipe Engineering Co.* v. *DeMatteo Construction Co.*, 159 Conn. 242, 249, 268 A.2d 391 (1970) (concluding that, to constitute valid contract, agreement "must be found to have been based on an identical understanding by the parties"). "Under established principles of contract law, an agreement must be definite and certain as to its terms and requirements." (Internal quotation marks omitted.) *Suffield Development Associates Ltd. Partnership* v. *Society for Savings*, 243 Conn. 832, 843, 708 A.2d 1361 (1998). Nonetheless, parties may agree to either a restricted or unrestricted arbitration. "The authority of an arbitrator to adjudicate the controversy is limited only if the agreement contains express language restricting the breadth of issues, reserving explicit rights, or conditioning the award on court review. In the absence of any such qualifications, an agreement is unrestricted." *Garrity* v. *McCaskey*, 223 Conn. 1, 5, 612 A.2d 742 (1992).

With these parameters in mind, we turn to the written correspondence between the parties, which reveals the following chronology of letters sent between the defendant's counsel and the plaintiffs' counsel.[4] In a letter dated January 27, 2005, the defendant's counsel indicated that arbitration had been "discussed . . . ." He requested therein that the plaintiffs' counsel "indicate in writing whether or not you would submit the claims of [the plaintiffs] to binding high/low arbitration. If you are willing to submit the claims to arbitration, please let me know what you would consider appropriate high/

---

[4] The plaintiffs' appellate counsel did not represent the plaintiffs during the trial court proceedings.

low limits." In a letter dated March 28, 2005, the defendant's counsel asked for information relating to potential damages and closed with a request to "call me upon receipt of this letter to discuss arbitration . . . ." In a second letter also dated March 28, the defendant's counsel stated that he was authorized to enter into "high/low arbitration with regard to . . . Catherine Farrell, using the insurance policy limit of $100,000" as the upper limit. He further indicated that he "would like to arbitrate" Olivia Farrell's claim at the same time, but for "a much lower 'high' limit than the policy," and sought a response from the plaintiffs' counsel on his desired limits for such an arbitration. The defendant's counsel noted that he had enclosed "draft arbitration agreements for each of your clients" and asked the plaintiffs' counsel to "review and advise at your very earliest convenience." The attached documents were stamped at the top: "DRAFT. For Discussion Purposes Only."

On September 8, 2005, the defendant's counsel again wrote to the plaintiffs' counsel "to inquire as to the status of our plans to arbitrate . . . ." The plaintiffs' counsel replied in a September 22, 2005 letter suggesting a range of up to $75,000 for Olivia Farrell's claim and requesting that the defendant's counsel contact his secretary to coordinate the selection of an arbitrator and the scheduling of arbitration. The October 5, 2005 reply of the defendant's counsel suggested the name of a possible arbitrator and, in response to the plaintiffs' proposed range for Olivia Farrell's claim, commented: "This is [a] soft tissue case. You must have taken leave of your senses. Please present me with a more realistic set of parameters."

On November 2, 2005, the defendant's counsel sent another letter, indicating that "[a]ll that remains is for us to agree on an arbitrator . . . and execute a binding arbitration agreement with *reasonable* parameters." (Emphasis in original.) On January 13, 2006, the defen-

dant's counsel requested that the plaintiffs' counsel submit "a proposal *in writing*" as to limits for arbitration of Olivia Farrell's claim. (Emphasis in original.) On March 7, 2006, the defendant's counsel wrote that the parties "have an informal agreement to arbitrate. We need to reduce that to writing as to both [plaintiffs]." He further requested that the plaintiffs' counsel notify him "in writing regarding the high and low parameters as to each [plaintiff]." On May 23, 2006, the defendant's counsel wrote seeking from the plaintiffs' counsel "a signed arbitration agreement within the next thirty days," and stating that he would close his file if no such agreement was reached. On September 7, 2006, the defendant's counsel wrote to the plaintiffs' counsel again, indicating that "we never entered into a signed [a]rbitration [a]greement . . . . As far as I am concerned, this matter is closed. If you want to arbitrate, it will take an application to compel arbitration to force the issue."

On February 12, 2007, the plaintiffs' counsel sent a letter explaining his delay in responding, and asking the defendant's counsel to inform him who he "would like to have sit as the arbitrator," and requesting that the parties "finally schedule this arbitration . . . ." The defendant's counsel subsequently responded on February 20, 2007, that his file had been closed, and that he therefore could not agree to arbitration. This final exchange reflected that there had been some oral communications between counsel on the subject of arbitration, but provided no specificity as to the substance of those communications.

With these facts in mind, we turn to the question of whether, drawing all possible inferences from this correspondence in favor of the plaintiffs, there was a genuine issue of material fact as to whether the parties' correspondence constituted an agreement to arbitrate. We conclude that there was not.

First, both parties indisputably sought a restricted arbitration agreement. Neither party ever, in writing, consented to or otherwise mentioned the possibility of an unrestricted arbitration. Indeed, as we discuss in the following paragraphs, the correspondence clearly establishes that the parties intended to set high and low limits for the arbitration, and the defendant proposed other conditions. Accordingly, if a genuine issue of material fact exists as to whether the parties had a written agreement to arbitrate, it must concern the issue of whether the parties ever reached a written agreement to submit to restricted arbitration. We therefore consider whether a genuine issue of material fact exists as to whether the correspondence between the parties constituted a written agreement to the same restricted arbitration.[5] The plaintiffs suggest that a "myriad number of inferences . . . could have been drawn from the timing and content of the correspondence . . . ." Nevertheless, we conclude that no inference can be drawn from the correspondence that could sustain a conclusion that it constituted a written agreement to arbitrate under the same parameters.

The unsettled nature of the agreement is reflected in several ways. On several occasions, the defendant's counsel proposed high and low limits for arbitration of the claims of one of the plaintiffs, to which it appears the plaintiffs' counsel did not respond. The defendant's counsel proposed using a specific arbitrator and provided draft agreements that set forth various conditions relating to arbitration—the plaintiffs' counsel never responded to either the proposal or the draft agreements. On the one occasion that the plaintiffs'

---

[5] If, for example, two parties exchanged letters expressly constituting a written agreement to submit to restricted arbitration, if one party proposed restricted arbitration with a damages cap of $50,000 and the other a damages floor of $75,000, it would be impossible to enforce any agreement to submit to restricted arbitration, as the terms adopted by each party would be mutually exclusive to each other.

counsel did propose a potential term of arbitration, namely, a range for Olivia Farrell's claims, the defendant's counsel unequivocally rejected it.

In the present case, the cumulative effect of the correspondence reflects that the plaintiffs and the defendant failed to reach a written agreement on a single parameter or condition of arbitration that either counsel had identified as necessary to the agreement. In short, every proposed term of arbitration was either rejected or apparently ignored by opposing counsel—the parties not only failed to reach an agreement on some essential terms of the arbitration, but also were in clear disagreement on others. Indeed, there cannot be a "meeting of the minds"; *Assn. Resources, Inc.* v. *Wall*, 298 Conn. 145, 188, 2 A.3d 873 (2010); when one party believes the other to "have taken leave of" their mind with respect to a term that the parties have treated as essential to the arbitration. Therefore, the plaintiffs failed to meet their burden to produce concrete evidence that could, under any inference, support a conclusion that the parties had formed a valid and enforceable written agreement to arbitrate.

Nonetheless, the plaintiffs claim that the totality of the correspondence, considered in conjunction with the affidavit of their attorney stating that the parties had agreed to arbitrate, creates a genuine issue of material fact as to whether the parties had agreed to arbitrate. Specifically, the plaintiffs claim that the oral communications between the parties' counsel expressing an intent to arbitrate, viewed alongside the written references by the defendant's counsel to "plans to arbitrate" and an "informal agreement to arbitrate" raises a genuine question as to whether the parties had in fact agreed to arbitrate. First, as we previously have noted, oral evidence cannot establish the agreement. See *Bennett* v. *Meader*, supra, 208 Conn. 359 ("[o]ral agreements are not included, implicitly or explicitly, in the descriptions

of valid arbitration agreements"). Furthermore, unless such intent is plainly memorialized in writing, however, the *intent* of the parties to arbitrate is not germane to the determination of whether parties have validly entered into an arbitration agreement. Indeed, in *Bennett*, this court affirmed a trial court's judgment vacating an arbitration award because there was no written agreement to arbitrate, despite the fact that both parties had fully participated in the arbitration process, and it was only after its completion that one of the parties sought to have the award vacated. Id., 364. Such participation is much clearer evidence of the intent of the parties to be bound by arbitration than the correspondence and affidavit offered in the present case. Accordingly, we conclude that, even if a genuine issue of fact exists as to whether the parties intended to submit to arbitration, that issue is not material to the question of whether the parties validly agreed in writing to arbitrate. See *Voris* v. *Middlesex Mutual Assurance Co.*, 297 Conn. 589, 600–601, 999 A.2d 741 (2010) (no genuine issue of material fact exists where issue is "legally immaterial" to resolution of case).

We conclude, drawing all inferences in favor of the plaintiffs, that no genuine issue of material fact exists with regard to whether the parties had an enforceable agreement to arbitrate. Accordingly, the trial court's summary judgment rendered in favor of the defendant was proper.

The judgment of the Appellate Court is affirmed.

In this opinion the other justices concurred.