******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# BRASS MILL CENTER, LLC *v.* SUBWAY REAL ESTATE CORP. ET AL.
## (AC 44436)

Suarez, Clark and Sheldon, Js.

*Syllabus*

The plaintiff shopping mall sought indemnification from the defendant A Co., a security company it contracted with to provide security services to the mall property, including crime prevention. The plaintiff had incurred economic losses as a result of a separate wrongful death action brought against it by the administrator of the estate of a pedestrian who had been struck and killed while crossing the roadway surrounding the mall while on her way to work in the mall. The wrongful death action alleged that the plaintiff's negligence caused the collision by, inter alia, its design of the mall's parking lots and roads and its failure to implement various traffic calming measures. The plaintiff demanded defense and indemnification from A Co. in connection with the wrongful death action; A Co. denied the plaintiff's demand, explaining that A Co. was not responsible for the design of the roadway or the absence of traffic calming measures. The plaintiff filed a motion for summary judgment in the indemnification action, asserting that, inter alia, A Co. had a contractual duty to defend and indemnify the plaintiff in connection with the wrongful death action, and A Co. filed a cross motion for summary judgment. The trial court denied A Co.'s motion, granted the plaintiff's motion as to liability and awarded damages to the plaintiff. On A Co.'s appeal to this court, *held* that the trial court erred in granting the plaintiff's motion for summary judgment and denying A Co.'s motion for summary judgment, as A Co. was entitled to judgment in its favor as a matter of law: A Co.'s obligation to defend the plaintiff was not triggered by the wrongful death action, as the wrongful death action did not contain allegations of negligence or other conduct that even arguably fell within the scope of A Co.'s contractual responsibilities to provide security services, and the court erroneously conflated the allegations in the wrongful death action regarding traffic control with A Co.'s contractual obligations for crime prevention as the security contractor for the property; moreover, as A Co. did not have a duty to defend the plaintiff pursuant to the indemnification provision of the security contract, A Co. did not have a duty to indemnify the plaintiff.

Argued March 2—officially released August 9, 2022

*Procedural History*

Action for, inter alia, indemnification for economic losses allegedly incurred by the plaintiff, and for other relief, brought to the Superior Court in the judicial district of Waterbury, where the action was withdrawn as against the named defendant et al.; thereafter, the court, *Roraback, J.*, denied in part the motion for summary judgment filed by the defendant AlliedBarton Security Services, LLC, and granted the plaintiff's motion for summary judgment as to liability; subsequently, after a hearing in damages, the court, *Roraback, J.*, rendered judgment for the plaintiff, from which the defendant AlliedBarton Security Services, LLC, appealed to this court. *Reversed*; *judgment directed.*

*Ashley A. Noel*, with whom was *Cassandra Pilczak*, for the appellant (defendant AlliedBarton Security Services, LLC).

*Michael Smith*, for the appellee (plaintiff).

*Opinion*

CLARK, J. The defendant AlliedBarton Security Services, LLC,[1] appeals from the judgment rendered by the trial court in favor of the plaintiff, Brass Mill Center, LLC, granting summary judgment as to liability and awarding damages. The defendant argues that the trial court improperly concluded that it had a contractual duty (1) to defend the plaintiff in an underlying wrongful death action brought against the plaintiff and (2) to indemnify the plaintiff in that same wrongful death action, including for attorney's fees and costs that the plaintiff incurred in pursuing claims against third parties. We agree and, accordingly, reverse the judgment of the trial court.

The following facts and procedural history are relevant to this appeal. The plaintiff, the owner of the Brass Mill Center & Commons shopping mall in Waterbury (mall), and the defendant, a security company, are parties to a security agreement, which sets forth the security services that the defendant is obligated to provide the plaintiff. The security agreement states that "[The defendant's] personnel assigned to the Property[2] shall be responsible for promoting a pleasant shopping atmosphere and crime prevention efforts through patrol of the Property; seeking out and providing appropriate customer service to patrons; reasonable inspection of the Property for safety hazards and enforcement of the Property's rules and regulations; appropriate response to incidents and emergencies; preliminary investigation and appropriate disposition of incidents; access control/physical security as appropriate during operating and non-operating hours; official reporting of activities, incidents, and inspection logs; and any special assignments and/or events related to the security/safety function of the Property as agreed upon by the parties." (Footnote added.)

The security agreement also contains an indemnification provision that provides in relevant part that "[the defendant] agrees that [i]t shall defend, indemnify, and hold harmless [the plaintiff] . . . from and against any claims, liabilities, losses, damages, actions, causes of action, or suits to the extent caused by (A) any actual or alleged negligent or grossly negligent act or omission or willful misconduct of [the defendant] or its agents or employees at the Property or in connection with this Agreement or breach thereof in any way . . . ."[3]

At approximately 8:20 a.m. on December 21, 2012, Yaneli Nava Perez, who was a pedestrian crossing the travel lane of the mall on her way to work in the mall's food court, was struck by a vehicle driven by a seventeen year old unlicensed driver. The weather conditions at the time of the accident were poor, with heavy to torrential rains and high wind gusts. The windows of the vehicle were obscured by "fog," preventing the young

driver from seeing Perez at the time of the collision. After the Waterbury police and emergency responders arrived at the scene, Perez was transported by ambulance to St. Mary's Hospital for emergency treatment, where she later succumbed to her injuries.

In 2014, Gabriel Avendano, the administrator of the estate of Yaneli Nava Perez, filed a four count complaint (Avendano complaint) against the plaintiff, General Growth Services, Inc., General Growth Management, Inc., and Anthony Guerriero (Avendano action).[4] As we discuss in greater detail later in this opinion, the Avendano complaint alleged eight separate allegations of negligence against the plaintiff, including, inter alia, that the plaintiff failed to install or use any traffic calming measures on the roadway within the mall premises that ran parallel to Union Street and designed the premises in such a way so as to allow motorists to easily travel at unsafe rates of speed through areas routinely filled with pedestrians. The Avendano complaint did not name the defendant as a defendant.

On October 5, 2015, pursuant to the security agreement, the plaintiff demanded defense and indemnification from the defendant with respect to the Avendano action. By letter dated October 23, 2015, the defendant denied the plaintiff's tender, explaining, inter alia, that the Avendano complaint did not allege that the plaintiff "failed to do something that was required of [the defendant] under the [security] [a]greement. [The defendant] was clearly not responsible for the design of the roadway or the absence of traffic calming measures."

On August 25, 2016, the plaintiff filed the present action against the defendant, Subway Real Estate Corp. (Subway), and Foot Locker Retail, Inc. (Foot Locker). The complaint asserts two causes of action against the defendant: count VI alleges that the defendant had a contractual duty to defend and indemnify the plaintiff in connection with the Avendano complaint, and count VII alleges a common-law indemnification claim.

On October 28, 2019, the parties filed cross motions for summary judgment. In a memorandum of decision dated June 11, 2020, the court, *Roraback*, *J.*, granted the plaintiff's motion as to liability on the contractual indemnification claim but denied its motion with respect to the common-law indemnification claim. In so doing, the court concluded, as a matter of law, that the Avendano complaint could "fairly [be] read to allege negligent acts or omissions for which [the defendant] was responsible under its contractual duties to inspect, monitor and secure the property . . . ." Accordingly, it held that the defendant had a duty to defend the plaintiff. The court also held that the defendant had a duty to indemnify the plaintiff.[5] The court also denied the defendant's motion for summary judgment in its entirety.

On July 1, 2020, the defendant filed a motion to reargue/reconsider the court's June 11, 2020 decision arguing, inter alia, that, because the court had denied the plaintiff's motion for summary judgment with respect to the common-law indemnification claim on the basis that the plaintiff was unable to satisfy two of the four elements required to prevail on its claim, the court should have granted the defendant's motion for summary judgment with respect to that claim. On July 17, 2020, the court issued a decision granting the defendant's motion for summary judgment as to the plaintiff's common-law indemnification claim.[6]

On September 9, 2020, the court held a hearing in damages. In a memorandum of decision dated December 3, 2020, the trial court awarded the plaintiff damages totaling $426,807.97,[7] plus offer of compromise interest on that amount at a rate of 8 percent per annum from May 24, 2019, until the date that judgment entered, and postjudgment interest at a rate of 5 percent per annum from the date that judgment entered until the date the judgment is satisfied. This appeal followed.

We begin by setting forth our standard of review. "Summary judgment rulings present questions of law; accordingly, [o]ur review of the . . . decision to grant [a] . . . motion for summary judgment is plenary." (Internal quotation marks omitted.) *Farrell* v. *Twenty-First Century Ins. Co.*, 301 Conn. 657, 661, 21 A.3d 816 (2011); see also Practice Book § 17-49. In addition, the interpretation of definitive contract language presents a question of law, over which our review also is plenary. See, e.g., *CCT Communications, Inc.* v. *Zone Telecom, Inc.*, 327 Conn. 114, 133, 172 A.3d 1228 (2017); see also *Misiti, LLC* v. *Travelers Property Casualty Co. of America*, 308 Conn. 146, 154, 61 A.3d 485 (2013).

We must also determine the appropriate standard of review and analysis to employ when deciding whether one sophisticated business party to a contract has a contractual duty to defend a claim brought against another sophisticated business party to that contract. The duty to defend most commonly arises in the context of a contract of insurance; see, e.g., *DaCruz* v. *State Farm Fire & Casualty Co.*, 268 Conn. 675, 687, 846 A.2d 849 (2004); and our courts have made clear that "whether an insurer has a duty to defend its insured is purely a question of law . . . ." (Internal quotation marks omitted.) *Lift-Up, Inc.* v. *Colony Ins. Co.*, 206 Conn. App. 855, 866, 261 A.3d 825 (2021). Our appellate courts have not previously addressed whether our standard of review and analysis regarding a duty to defend in the context of insurance contracts should apply to contracts between sophisticated business entities that contain similar provisions. See, e.g., *Henderson* v. *Bismark Construction Co.*, Superior Court, judicial district of Fairfield, Docket No. CV-17-6062488-S (July 10, 2019) (68 Conn. L. Rptr. 852, 853) ("[a]lthough research did

not reveal any appellate authority, and the parties have not provided any appellate authority, a few Superior Court decisions have discussed whether the law on an insurer owing a duty to defend applies to the analysis of whether one of two commercial parties owes a duty to defend to the other based on a contract for indemnity"). In reviewing our case law, we discern no reason to apply a different analysis in such cases.[8] Accordingly, we hold that "[t]he question of whether [one sophisticated business party] has a [contractual] duty to defend [another sophisticated business party] is purely a question of law, which is to be determined by comparing the allegations of [the] complaint with the terms of the [parties' agreement]." (Internal quotation marks omitted.) *Misiti, LLC* v. *Travelers Property Casualty Co. of America*, supra, 308 Conn. 154.

With this standard of review in mind, we next turn to the legal principles that inform our analysis. "A contract must be construed to effectuate the intent of the parties, which is determined from the language used interpreted in the light of the situation of the parties and the circumstances connected with the transaction. . . . [T]he intent of the parties is to be ascertained by a fair and reasonable construction of the written words and . . . the language used must be accorded its common, natural, and ordinary meaning and usage where it can be sensibly applied to the subject matter of the contract. . . . Where the language of the contract is clear and unambiguous, the contract is to be given effect according to its terms. A court will not torture words to import ambiguity where the ordinary meaning leaves no room for ambiguity . . . . Similarly, any ambiguity in a contract must emanate from the language used in the contract rather than from one party's subjective perception of the terms." (Internal quotation marks omitted.) *Tallmadge Bros., Inc.* v. *Iroquois Gas Transmission System, L.P.*, 252 Conn. 479, 498, 746 A.2d 1277 (2000).

Moreover, as noted, we conclude that a duty to defend in the context of insurance contracts applies equally to contracts between sophisticated business parties that contain similar defense and indemnification provisions. To that end, it is well settled that an insurer's duty to defend "is determined by reference to the allegations contained in the [underlying] complaint." (Internal quotation marks omitted.) *DaCruz* v. *State Farm Fire & Casualty Co.*, supra, 268 Conn. 687. The duty to defend "does not depend on whether the injured party will successfully maintain a cause of action against the insured but on whether [the complaint] stated facts which bring the injury within the coverage." (Internal quotation marks omitted.) *Security Ins. Co. of Hartford* v. *Lumbermens Mutual Casualty Co.*, 264 Conn. 688, 712, 826 A.2d 107 (2003). "If an allegation of the complaint falls even possibly within the coverage, then the insurance company must defend the insured." (Internal

quotation marks omitted.) *Moore* v. *Continental Casualty Co.*, 252 Conn. 405, 409, 746 A.2d 1252 (2000). However, an insurer "has a duty to defend only if the underlying complaint *reasonably* alleges an injury that is covered by the policy." (Emphasis in original.) *Misiti, LLC* v. *Travelers Property Casualty Co. of America*, supra, 308 Conn. 156. "[W]e will not predicate the duty to defend on a reading of the complaint that is . . . conceivable but tortured and unreasonable." (Internal quotation marks omitted.) Id.

"In contrast to the duty to defend, the duty to indemnify is narrower: while the duty to defend depends only on the allegations made against the insured, the duty to indemnify depends upon the facts established at trial and the theory under which judgment is actually entered in the case." (Internal quotation marks omitted.) *Board of Education* v. *St. Paul Fire & Marine Ins. Co.*, 261 Conn. 37, 48–49, 801 A.2d 752 (2002). "[W]here there is no duty to defend, there is no duty to indemnify, given the fact that the duty to defend is broader than the duty to indemnify." *QSP, Inc.* v. *Aetna Casualty & Surety Co.*, 256 Conn. 343, 382, 773 A.2d 906 (2001).

With these principles in mind, we turn our attention to the language of the indemnification provision in the parties' security agreement. By its terms, "[The defendant] agrees that [i]t shall defend, indemnify, and hold harmless [the plaintiff], GGP Limited Partnership and General Growth Properties, Inc. ('Indemnitees') and the agents, officers and employees of all of the Indemnitees from and against any claims, liabilities, losses, damages, actions, causes of action, or suits to the extent caused by (A) any actual or alleged negligent or grossly negligent act or omission or willful misconduct of [the defendant] or its agents or employees at the Property or in connection with this Agreement or breach thereof in any way . . . ." It further provides that "[i]t is intended that all claims and demands, legal proceedings and lawsuits in which any party to this Agreement or additional insured under this Agreement is named or described as a defendant which alleges or describes any claim in which [the defendant] or a security officer has done or has failed to do any act or thing required pursuant to this Agreement or failed to provide the Services at the Property shall be a claim tendered to, accepted by or defended by [the defendant]." See footnote 3 of this opinion.

As the language of the indemnification provision makes clear, the defendant agreed to defend the plaintiff against claims brought against the plaintiff alleging conduct falling within the scope of the defendant's obligations under the security agreement. With respect to the scope of the defendant's obligations under the contract, section 3 of the security agreement sets forth the "On-Site Contracted Services." In particular, subsection B of section 3, titled "Security Functions," provides:

"[The defendant's] personnel assigned to the Property shall be responsible for promoting a pleasant shopping atmosphere and crime prevention efforts through patrol of the Property; seeking out and providing appropriate customer service to patrons; reasonable inspection of the Property for safety hazards and enforcement of the Property's rule and regulations; appropriate response to incidents and emergencies; preliminary investigation and appropriate disposition of incidents; access control/physical security as appropriate during operating and non-operating hours; official reporting of activities, incident, and inspection logs; and any special assignments and/or events related to the security/safety function of the Property as agreed upon by the parties."

Additionally, section 3 of the security agreement addresses "Duties/Responsibilities." Specifically, subsection H of section 3 of the security agreement states that the defendant "shall provide a comprehensive security policy and procedures manual for the Property ('Manual'). The Manual shall consist of [the defendant's] mall security guidelines and site-specific 'security orders'. Site-specific 'security orders' shall include, but not be limited to, mall organizational structure, radio call signs and procedures, code of conduct, tenant rules, commonly encountered state laws, banning guideline, shift procedures to include opening and closing procedures, and site specific inspections. The Property Manager[9] shall have the right to approve any site-specific 'security orders' related to the operation of the Property. [The defendant's] Security Staff shall be familiar with, understand and adhere to the requirements of The Manual at all times. The Manual shall be developed within thirty (30) days following the Effective Date and shall be updated during the Term at the request of [the defendant], the Property Manager, or the GGP Corporate Security Director." (Footnote added.)

At this point, we must determine whether the Avendano complaint triggered the defendant's duty to defend the plaintiff under the terms of the security agreement. The defendant argues that the allegations in the Avendano complaint did not fall within its contractual obligations under the security agreement because the complaint did not contain any allegations of negligence, or other conduct, that even arguably falls within the scope of the defendant's contractual responsibilities under the security agreement. The plaintiff disagrees. In its view, the security agreement "is notably broad and certainly encompasses the mall parking lot/roadway safety claims asserted in the [Avendano complaint]." On the basis of our review of the security agreement and the allegations in the Avendano complaint, we conclude that the defendant's obligation to defend the plaintiff was not triggered by the Avendano complaint.

The Avendano complaint alleged that the plaintiff negligently caused the subject collision because it

"failed to install or use any traffic calming measure on the roadway within the mall premises that ran parallel to Union Street"; "failed to install or use sufficient traffic calming measures on the roadway within the mall premises that ran parallel to Union Street"; "knew that numerous accidents occurred on the roadway within the mall that ran parallel to Union Street but failed to make any measures to slow traffic down"; "failed to properly inspect the traffic, accidents, parking areas and internal roadways"; "designed the premises in such a way so as [to] allow motorists to easily travel at unsafe rates of speed through areas routinely filled with pedestrians"; "knew or should have known that motorists sped through the mall property, yet took no steps to slow them down"; "ignored the need for traffic calming measures at the Brass Mill Center for economic reasons"; and/or "knew that other mall properties within the General Growth Properties company installed and used traffic calming measures to protect pedestrians, yet failed to implement any such procedures at the Brass Mill Center."

It is clear from these allegations that the theory of liability against the plaintiff was premised on the layout and design of the mall's internal roadways and parking lots and the plaintiff's alleged failure to monitor and implement traffic calming measures on the property to prevent motor vehicles from operating at excessive rates of speed. We have found nothing in the security agreement or the procedures manual that suggests that the defendant had any obligation to monitor or control traffic, to design or redesign the layout of the parking lots or roads, or otherwise to implement traffic calming measures.[10]

Upon our review of the Avendano complaint and the security agreement, we agree with the defendant that the court erroneously conflated the allegations of the Avendano complaint regarding traffic control and design with the defendant's responsibility for crime prevention as the security contractor for the property. The defendant's obligations under the security agreement to respond to "incidents and emergencies"; to notify law enforcement; to make "reasonable inspection of the Property for safety hazards"; to prepare incident reports and inspection logs after those occurrences; and to "track statistical trending for the Property" do not include or impose upon the defendant any obligation to control the traffic on the property, install traffic calming measures, or design or redesign the mall's parking lots or thoroughfares.

Although the plaintiff points to the allegation in the Avendano complaint that the plaintiff "failed to properly inspect the traffic, accidents, parking areas and internal roadways" as the basis for its contention that the Avendano complaint triggered the defendant's duty to defend, we are not persuaded that this allegation falls

within the defendant's obligation under the security agreement to make "reasonable inspection of the Property for safety hazards." Rather, that allegation, read within the context of the entire Avendano complaint, clearly pertains to the plaintiff's alleged failure to properly design the mall's parking lots and roads and implement traffic calming measures—obligations not coming within the defendant's contractual obligations. Indeed, it is difficult to conjure a contrary interpretation in light of the nature of the claims made in the Avendano complaint. We decline to "predicate the duty to defend on a reading of the complaint that is . . . conceivable but tortured and unreasonable." (Internal quotation marks omitted.) *R.T. Vanderbilt Co.* v. *Hartford Accident & Indemnity Co.*, 171 Conn. App. 61, 91, 156 A.3d 539 (2017), aff'd, 333 Conn. 343, 216 A.3d 629 (2019). As such, we cannot conclude that the Avendano "complaint *reasonably* alleges an injury that is covered by the [indemnification provision]." (Emphasis in original; internal quotation marks omitted.) *Kling* v. *Hartford Casualty Ins. Co.*, 211 Conn. App. 708, 714, 273 A.3d 717, cert. denied, 343 Conn. 926, 275 A.3d 627 (2022).

Because we conclude that, as a matter of law, the defendant did not have a duty to defend the plaintiff pursuant to the indemnification provision of the security agreement, it inexorably follows that the defendant did not have a duty to indemnify the plaintiff either. See, e.g., *QSP, Inc.* v. *Aetna Casualty & Surety Co.*, supra, 256 Conn. 382 ("where there is no duty to defend, there is no duty to indemnify, given the fact that the duty to defend is broader than the duty to indemnify"). We therefore conclude that the trial court improperly granted summary judgment in favor of the plaintiff. In light of the absence of any genuine issue of material fact as well as our conclusion that the defendant did not owe the plaintiff a duty to defend or indemnify, the defendant is entitled to judgment in its favor as a matter of law.

The judgment is reversed and the case is remanded with direction to deny the plaintiff's motion for summary judgment and to grant the defendant's motion for summary judgment and to render judgment thereon for the defendant.

In this opinion the other judges concurred.

[1] Subway Real Estate Corp. (Subway) and Foot Locker Retail, Inc. (Foot Locker), were also named as defendants in the present action. The plaintiff's claims for defense and indemnity against Subway and Foot Locker were eventually settled leaving AlliedBarton Security Services, LLC, as the sole defendant in this case. Accordingly, we refer to AlliedBarton Security Services, LLC, as the defendant in this opinion.

[2] The security agreement defines " 'Property' " as the "Brass Mill Center & Commons located at 495 Union Street, Waterbury, CT 06706."

[3] Section 8 (e) of the security agreement provides in its entirety: "[The defendant] agrees that [i]t shall defend, indemnify, and hold harmless [the plaintiff], GGP Limited Partnership and General Growth Properties, Inc. ('Indemnitees') and the agents, officers and employees of all of the Indemnitees from and against any claims, liabilities, losses, damages, actions, causes of action, or suits to the extent caused by (A) any actual or alleged negligent or grossly negligent act or omission or willful misconduct of [the defendant]

or its agents or employees at the Property or in connection with this Agreement or breach thereof in any way, (B) [the defendant's] failure to purchase and maintain all insurance required by this Agreement and (C) negligence or willful misconduct of [the defendant] or its agents or employees in any operation of a Security Vehicle under this Agreement. It is intended that all claims and demands, legal proceedings and lawsuits in which any party to this Agreement or additional insured under this Agreement is named or described as a defendant which alleges or describes any claim in which [the defendant] or a security officer has done or has failed to do any act or thing required pursuant to this Agreement or failed to provide the Services at the Property shall be a claim tendered to, accepted by or defended by [the defendant]. [The plaintiff] shall within thirty (30) days after notice of any incident, potential claim or suit, or service of legal process, provide [the defendant], at AlliedBarton Security Services LLC, Eight Tower Bridge, 161 Washington Street, Suite 600, Conshohocken, PA 19428 to the attention of Michael A. Meehan, Vice President/Deputy General Counsel with written notice that an action has been brought and shall require [the defendant], at its own expense, to employ such attorneys as [the defendant] may see fit to employ, and as reasonably approved by [the plaintiff's] Director of Risk Management, to defend such claim or action on behalf of the Indemnitees. If a tender of defense and/or indemnity is refused by [the defendant] or its insurer, or if a defense is provided under any reservation of rights and [the plaintiff] does not consent to such refusal or reservation of rights, [the defendant] shall pay liquidated damages in the sum of $2,000.00 to [the plaintiff] for the amount of the added internal expense incurred by the Indemnitees in dealing with the claim or action for which tender was refused or rights reserved. This liquidated damages provision shall be in addition to the Indemnitees' actual costs of defense, investigation, litigation, litigation management expenses for in-house counsel, costs of trial and/or settlement of the claim which are incurred by the Indemnitees which shall be billed to [the defendant] as incurred until the tender is accepted without reservation. The provisions of this paragraph shall survive the termination or expiration of this Agreement and shall not be construed to provide for any indemnification which would, as a result thereof, make the provisions of this paragraph void or to reduce or eliminate any other indemnification or right which the indemnified parties have be law."

[4] The complaint alleged that the plaintiff, General Growth Services, Inc., and General Growth Management, Inc., were owners and operators of the mall and its parking lots and internal roadways and that Guerriero was the manager of the mall on the day of the accident.

[5] In the defendant's motion for summary judgment, the defendant also argued that it was entitled to summary judgment because the plaintiff failed to provide the defendant with the requisite thirty day written notice set forth in the indemnification provision of the security agreement. The court rejected that argument, stating, inter alia, that the defendant failed "to plead lack of proper notice as a special defense," which "precludes it from prevailing on this ground in the context of either winning its motion for summary judgment or defeating [the plaintiff's] motion for summary judgment." The defendant does not challenge this portion of the court's judgment on appeal.

[6] The plaintiff has not appealed from that decision.

[7] The court found that the plaintiff paid the sum of $500,000 to settle the Avendano action, and received contributions from three third parties in the aggregate amount of $255,000 toward the settlement. Accordingly, the court found that the plaintiff's damages were the unpaid portion of the Avenado settlement—$245,000. The court also found that the legal fees expended by the plaintiff were reasonable, including the legal fees expended by the plaintiff in obtaining contributions from Subway, Foot Locker, and the plaintiff's prior counsel, reasoning that the contributions the plaintiff received inured to the benefit of the defendant. In total, the court awarded legal fees and expenses in the amount of $179,807.97. Last, the court held that the plaintiff was entitled to $2000 in liquidated damages pursuant to the security agreement.

[8] We note that numerous Superior Court decisions also have held that that our jurisprudence regarding a duty to defend in the context of insurance contracts applies equally to contracts between sophisticated business parties that contain similar defense and indemnification provisions. See, e.g., *Henderson* v. *Bismark Construction Co.*, supra, 68 Conn. L. Rptr. 853–54 (collecting cases); *Gemma Power Systems, LLC* v. *Smedley Co.*, Superior Court, judicial district of Hartford, Docket No. CV-15-6059165 (July 26, 2017) (same).

[9] "Property Manager" is defined as "[the plaintiff's] property manager."

[10] To the extent there is any ambiguity with respect to the defendant's obligations under the security agreement, undisputed evidence in the record resolves that ambiguity in favor of the defendant. The plaintiff's own representative, Guerriero, the general manager of the mall, testified at a deposition that traffic calming measures, including implementing signage on the mall's roadways to slow vehicular traffic down, fell within the plaintiff's purview and was not the defendant's contractual obligation. Similarly, Steven Crumrine, the corporate security director for General Growth Properties, Inc., who oversees the defendant's compliance with the security agreement, testified at a deposition that the defendant was not responsible for installation, implementation, and/or design of the roadway within the mall property and testified that there was no language within the security agreement that required the defendant to employ, install, and/or use traffic calming measures or slow down traffic on the roadway. When asked whether there was an expectation for a security officer of the defendant to attempt to stop a speeding motorist if the officer observed one, Crumrine testified, "No." He indicated that "[t]hey're not trained nor do they have the legal authority to do that. Their own policies and procedures manual would prohibit them from pulling over a vehicle, and we wouldn't expect them to do that either because it presents an elevated risk. It's not what they're trained to do." Tawana Perry, the defendant's national account portfolio manager for General Growth Properties, Inc., similarly confirmed in her deposition testimony that the defendant was not responsible for traffic calming measures.